JAMES R. NUGENT, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK ET AL.

Argued November 5, 1908—Decided February 23, 1909.

Section 185 of "An act to regulate elections," Revision of 1898 (*Pamph. L., p.* 319), furnishes a legislative definition of what shall be deemed to be a majority of the legal voters voting at an election with respect to any proposition submitted at such election, hence such definition will be applied to subsequent legislation unless such subsequent legislation excludes it either expressly or by necessary implication.

---

On *certiorari.*

Before Justices GARRISON, PARKER and VOORHEES.

For the prosecutor, *Herbert Boggs.*

For the defendant, *Francis Child, Jr.*

The opinion of the court was delivered by

VOORHEES, J. This is a writ of *certiorari* reviewing a resolution of the board of street and water commissioners of Newark, providing for the issue of $25,000 temporary loan bonds authorized under the provisions of chapter 272 of the laws of 1907 (*Pamph. L., p.* 686), entitled "An act to authorize the construction and establishment of public docks and shipping facilities and the purchasing and acquiring of riparian lands * * * necessary therefor * * * and for the regulation of the same * * *." The act in question has a referendum clause. It was submitted by resolution of the common council of Newark to the legal voters at the annual election in November, 1907. The total number of ballots cast at the annual election, after deducting the rejected ballots, was forty-seven thousand three hundred and sixty-two. The ballots cast in favor of the docks was thirteen thousand one hundred and seventy-six, and against, eleven thousand three hundred and seven. Total ballots cast upon the question of acceptance or rejection, twenty-four thousand four hundred and eighty-three. The resolution brought up by *certiorari* was then passed by the board of street and water commissioners on the assumption that the act had been adopted by the legal voters of Newark.

The question raised in this case is whether the act has been legally accepted under the referendum provision which provided "if a majority of the legal voters voting at such election shall vote in favor of accepting the provisions of the act" the same shall go into effect. The act also provides that it must be submitted "at the next annual election."

It will be seen that a majority of the legal voters voting at such election would be twenty-three thousand six hundred and eighty-two, while only thirteen thousand one hundred and seventy-six votes were cast for the adoption of the act. Therefore, the act did not receive a majority of the legal voters who voted at such annual election on other questions submitted, but did receive a majority of the legal voters voting at such election for the acceptance or rejection of the statute.

The legislature has furnished a definition of what shall con-

stitute a majority of the legal voters with respect to a proposition submitted to such voters. By section 185 of "An act to regulate elections," Revision, 1898 (*Pamph. L., p.* 319), it is provided:

"When by the provisions of any statute the decision of any question has been or shall be submitted to the decision of a majority of the legal voters of this state or of any subdivision thereof; or when the approval of a majority of the legal voters of this state or of any subdivision thereof is required in any statute before such statute takes effect or before any prescribed action or proceeding under such statute shall be valid and lawful, it is hereby declared that the intent and meaning in any such statute of the words, legal voters, are persons entitled to vote, and who do vote, at the time and in the manner prescribed in and by such statute upon the question or proposition submitted; and that for the purpose of ascertaining what is a majority of the legal voters of any district defined in such statute upon the proposition therein directed to be submitted, the persons who do not vote at such election shall not be estimated, counted or considered for the purpose of ascertaining what is a majority of the legal voters in such district, with respect to the proposition submitted; such votes shall be estimated and canvassed, and the result thereof determined by the several boards of election, and boards of canvassers, in the same manner as the results of other elections are estimated, canvassed and determined."

That this enactment was designed to furnish and does furnish a legislative definition of what shall be deemed to be a majority of the legal voters voting at an election with respect to any proposition submitted at such election, cannot be doubted, hence such definition will be applied to subsequent legislation unless such subsequent legislation excludes it either expressly or by necessary implication.

Mr. Justice Dixon, in *Little* v. *Bowers,* 17 *Vroom* 300; *affirmed,* 19 *Id.* 370, speaking of the provision of the General Corporation act of 1846 that the charter of every corporation which should thereafter be granted should be subject to repeal, &c., says: "This provision did not bind subsequent legisla-

tures so that they could not grant irrepealable charters, but it created a law which can never justly be put out of sight in determining whether any charter granted was designed to be irrepealable. All acts of the legislature are performed in contemplation of existing laws, and repeals by implication are not favored, and hence this law of 1846 is to be considered as embodied in every corporate charter thereafter passed, unless a purpose to exclude it be plainly perceived."

Of like import is *Bartlett* v. *Trenton,* 9 *Vroom* 64, where Justice Van Syckel, writing for this court, said: "When the intention of the lawgiver, which is to be sought after in the interpretation of a statute, is specifically declared in a prior section as to a particular matter, is must prevail over a subsequent clause in general terms, which might, by construction, conflict with it. The legislature must be presumed to have intended what it expressly stated, rather than that which might be inferred from the use of general terms."

The statutory definition must therefore control subsequent acts in *pari materia* except where the legislature has either in express language or by implication so strong as not to be resisted, indicated the legislative purpose to supersede it.

The conclusion is that the act having received in favor of its acceptance a majority of the votes of the legal voters voting upon the question of its acceptance it has been duly accepted, and therefore the resolution under review was legally passed.