M. E. DERRYBERRY *et al. v.* STATE BOARD OF ELECTION COM'RS *et al.**

*(Nashville.* December Term, 1924.)

1. **CONSTITUTIONAL LAW.** Act authorizing constitutional convention, if favored by majority of votes cast on proposition, held not unconstitutional.

Public Acts 1923, chapter 119, section 1, providing for constitutional convention, if majority of votes cast on such proposition at general election be favorable thereto, *held* not contrary to Const., article 11, section 3, authorizing convention when "majority of all the votes cast shall be in favor of said proposition;" election provided for being special one, though held on same date as general election. (*Post, pp.* 531-535.)

Acts cited and construed: Acts 1923, ch. 119, sec. 1

Cases cited and approved: Prohibitory Amendment Cases, 24 Kan., 700; Davis v. Brown, 46 W. Va., 716; Nugent v. Newark, 77 N. J. Law, 425; State ex rel. v. Wilson, 129 Mo. App., 242; Montgomery County v Trimble, 104 Ky., 629; State v. Foraker, 46 Ohio St., 677; People ex rel. v. Berkeley, 102 Cal., 298; Knight v. Shelton, 134 F., 423; In re Denny, 156 Ind., 104; State v. Powell, 77 Miss., 545.

Cases cited and distinguished: Lawrence v. Ingersoll, 88 Tenn., 52; Louisville & Nashville Railroad Co. v. Davidson Co., 33 Tenn., 691.

Constitution cited and construed: Art. 11, sec. 3.

2. **CONSTITUTIONAL LAW.** Choice of delegates to constitutional vonvention àt election on question of holding convention prohibited by Constitution; ''then.''

Under Const., article 11, section 3, providing that, when majority of all votes cast is in favor of constitutional convention, ''then''

delegates shall be chosen, delegates cannot be chosen at same election as that on question of calling convention, as provided by Pub. Acts 1923, chapter 118; "then" meaning "in that event," "upon that contingency," "in that case," "at that time," or "subsequent in time" (citing Words & Phrases, First Series, "Then"). (*Post, pp.* 535, 536.)

Case cited and approved: Webb v. Carter, 129 Tenn., 182.

3. **CONSTITUTIONAL LAW.** Practical construction of constitutional provision by legislature entitled to great weight.

Legislature's practical construction of Const., article 11, section 3, for many years, as prohibiting choice of delegates to constitutional convention at election on question of calling convention, as shown by Pub. Acts 1919, chapters, 138, 186, Pub. Acts 1917, chapters 23, 24, Pub. Acts 1915, chapters 110, 111, Acts 1897, chapters 11, 12, Acts Ex. Sess. 1896, chapters 1, 2, and Acts 1881, chapters 125, 146, is entitled to great weight in construing such provision. (*Post, pp.* 536, 537.)

Acts cited and construed: Pub. Acts 1919, chs. 138, 186; Pub. Acts 1917, chs. 23, 24; Pub. Acts 1915, chs. 110, 111; Acts 1897, chs. 11, 12; Acts Ex. Sess. 1896, chs. 1, 2; Acts 1881, chs. 125, 146.

4. **CONSTITUTIONAL LAW.** Provision as to time for choosing delegates to constitutional convention mandatory.

Provision of Const., article 11, section 3, that, when majority of all votes cast is in favor of constitutional convention, "then delegates shall be chosen," is mandatory. (*Post, pp.* 537-539.)

Case cited and distinguished: State v. McCann, 72 Tenn., 10.

---

*Headnotes 1. Constitutional Law, 12 C. J., section 19; 2. Constitutional Law, 12 C. J., section 19; Then, 38 Cyc, p. 279; 3. Constitutional Law, 12 C. J., section 66; 4. Constitutional Law, 12 C. J., section 147.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.
—Hon. John R. Aust, Chancellor.

Jos. H. Acklin and John A. Pitts, for complainants.

Jno. J. Vertrees, Thos. H. Malone, Frank M. Thompson and E. J. Smith, for defendants.

Mr. Justice Hall delivered the opinion of the Court.

The two bills filed in this cause are companion bills, and were filed by complainants, who are citizens, taxpayers, and qualified voters of the State, against the State board of election commissioners, the State comptroller, and the attorney-general, under the Declaratory Judgments Act, seeking a decree declaring chapters 118 and 119, Acts 1923, to be valid statutes, and binding upon the election machinery of the State.

The bills alleged that Hon. Frank M. Thompson, Attorney-General of the State, in his official capacity, had rendered an opinion advising the State board of election commissioners that both of said acts violate the State Constitution, and are not valid statutes, and, by reason thereof, the State board of election commissioners will advise the county election boards that said acts are inoperative and void, with the result that the elections ordered by said acts will not be held in all of the counties of the State, unless their validity be upheld and declared by the courts.

By section 1 of chapter 118 it is provided that, at the general election to be held on Tuesday after the first Monday of November, 1924, there shall be elected ninety-

nine delegates to the constitutional convention; the representation or number of delegates from the respective counties or districts shall be the same as that in the House of Representatives of the present General Assembly.

Section 2 provides that the names of all candidates for delegates to the constitutional convention shall be printed upon the official ballot in the same manner and form as candidates for the House of Representatives of the General Assembly; that any person twenty-five years old, or over, may become a candidate, upon filing with the proper officers his nominating petition, containing not less than fifty names of legally qualified voters of his or her county or district.

Section 3 provides that the returns of the election of delegates shall be in the same manner and form as those made for members of the House of Representatives, and any vacancy that may arise shall be filled in like manner as prescribed by law for filling vacancies in the General Assembly.

Section 4 provides for the payment of the *per diem* of delegates to the convention.

Section 5 provides that the constitutional convention shall convene in Nashville ten days after the general election of November, 1924, and organize themselves into a constitutional convention by electing a president and such other officers as may be deemed necessary.

By section 1 of chapter 119 it is provided that, in order to enable the people to vote on the question of calling and holding a constitutional convention, there shall be printed upon the official ballot to be used in the general election to be held on Tuesday, after the first Monday in November, 1924, the following words:

"For a Convention.

"Against a Convention."

If the number of votes cast for a convention at said election be greater than the number of votes cast against a convention, then a constitutional convention shall be held at Nashville. Said convention shall meet ten days after said election, but, if for any reason delegates elected, or to be elected, to said convention should fail to assemble at that time, then in such an event, the General Assembly that meets in January, 1925, shall fix a date when the delegates elected, or to be elected shall assemble.

Defendants demurred to the bill. The demurrers challenged the validity of chapter 118 upon the ground that it provides for the election of delegates on the same day the vote is to be had upon the convention proposition, and is therefore violative of section 3, article 11, of the State Constitution.

The demurrers challenged the validity of chapter 119 on the ground that it provides that the convention proposition is to be determined by a majority of the votes cast upon that submission alone, whereas, under a proper interpretation of section 3, article 11, of our Constitution, the proposition must receive a majority of all votes cast in the regular election of November, 1924, whether cast for Governor or for other officials to be voted for at said regular election.

The causes being heard together, by consent, in the court below, the demurrer challenging the validity of chapter 118 was sustained by the chancellor, while the demurrer challenging the validity of chapter 119 was overruled.

150 Tenn.—34.

From this decree both complainants and defendants have appealed, and the causes were heard together in this court.

Section 3, article 11, of our Constitution, contains the following provision:

"The legislature shall have the right, at any time by law, to submit to the people the question of calling a convention to alter, reform or abolish this Constitution, and when upon such submission, a majority of all the votes cast shall be in favor of said proposition, then delegates shall be chosen, and the convention shall assemble in such mode and manner as shall be prescribed."

This provision originated with the present Constitution, and is the only provision contained in that instrument undertaking to define or limit the powers of the legislative department of the State with respect to submitting to the people the question of calling a convention to alter, reform, or abolish our present Constitution.

There is no controversy as to the meaning of either of the statutes in question. The only controversy is as to their validity. The controverted questions presented upon the appeals to this court are these:

(1) Does our Constitution require a majority of all the votes cast in the general election of November, 1924, or only a majority of the votes cast upon the question of a convention or no convention, as chapter 119 provides?

(2) Does the Constitution require the election of delegates to be held after the election upon the question of calling a convention has been held, and after the result has been ascertained, determined, and officially announced, or may both questions be voted upon in and

at one and the same election, and upon the same ballot, as chapter 118 provides?

The determination of the first question depends upon the proper construction of the words, "and when upon such submission, a majority of all the votes cast shall be in favor of said proposition." Does this language mean a majority of the votes cast upon the submission of the question of calling a convention, or does it mean that the submission shall receive a majority of all the votes cast in the general November election for any purpose?

In the first clause of section 3, article 11, of our Constitution, it is provided that amendments to said instrument proposed by the legislature must be ratified or approved by a majority of all the citizens of the State voting for representatives in the General Assembly, and that amendments shall not be proposed oftener than once in six years. But, as to the question of a constitutional convention, the legislature is not restricted as to time, and may provide for a submission of that question at any regular session, to be determined on any day it sees fit. The election provided for by the legislature is unquestionably a special election, and does not lose its special character by being held upon the same date that a general election is held. There is no language in section 3, article 11, that can be construed as requiring the submission to be made at a regular election, nor does it require a majority of the votes cast at said general election, but a majority of all the votes cast upon said proposition. The language of section 3, article 11, clearly confers upon the legislature the right at any time to submit to the people the question of calling a constitutional convention, and when, upon such submission, a majority of all the votes

cast upon said proposition shall be in favor of it, delegates shall be then chosen, and the convention shall assemble in such manner as shall be prescribed. We think that, if the framers of our Constitution had intended that the submission should be made at a regular election, and that a majority of the votes cast at such election should be necessary to carry the proposition, it is hardly conceivable that they would have failed to express such requirement in unmistakable language.

There is quite a conflict in the decisions from other jurisdictions upon the question. This is largely due to the peculiar language used in the several Constitutions, and partly due from views entertained by the different courts in construing similar provisions. In the following states it was held that the language employed clearly indicated that a majority of the votes cast upon the proposition, though less than the whole number cast at the general election, was determinative. *Prohibitory Amendment Cases,* 24 Kan., 700; *Davis* v. *Brown,* 46 W. Va., 716, 34 S. E., 839; *Nugent* v. *Newark,* 77 N. J. Law, 425, 72 A., 11; *State ex rel.* v. *Wilson,* 129 Mo. App., 242, 108 S. W., 128; *Montgomery County* v. *Trimble,* 104 Ky., 629, 47 S. W., 773, 42 L. R. A., 738.

In *State* v. *Foraker,* 46 Ohio St., 677, 23 N. E., 491, 6 L. R. A., 422, the Constitution required the submission to be made at a general election, when representatives and senators were chosen, and required that "a majority of the electors voting at such election shall adopt such amendment." The court held, in view of this language, that the amendments must receive a majority of the votes cast at "such election," and not merely a majority of those voting on the amendments.

In *People ex rel.* v. *Berkeley,* 102 Cal., 298, 36 P., 591, 23 L. R. A., 838, the constitutional requirement was "whenever a majority of the electors voting at a general election shall so determine."

In Arkansas the requirement was that the proposition should be submitted at a general election, "and, if a majority of the electors voting at such election adopt such amendment, the same shall become a part of this Constitution." *Knight* v. *Shelton* (C. C.), 134 F., 423.

*In re Denny,* 156 Ind., 104, 59 N. E., 539, 51 L. R. A., 722, the constitutional requirement was that the submission should be made "to the electors of the State, and if a majority of said electors shall ratify the same." It was held that the word "electors," as here used, meant "persons possessed of the legal qualifications entitling them to vote," whether they actually voted in the election or not.

In *State* v. *Powell,* 77 Miss., 545, 27 So., 927, the language of the Mississippi Constitution was practically identical with that of Indiana. The court held that the majority required for the adoption of a constitutional amendment must be a majority of all the electors voting at the election, not simply all voting on the adoption or rejection of the constitutional amendment submitted.

In none of these cases, in fact, no case has been cited, and we have not been able to find any, where the language is similar to that contained in our Constitution. Therefore the above decisions are not controlling, and are entitled to but little weight here.

In *Lawrence* v. *Ingersoll,* 88 Tenn., 52, 12 S. W., 422, 6 L. R. A., 308, 17 Am. St. Rep., 870, the common-law rule governing elections is thus stated:

"In the case of a general or special election by the vote of the people, by the vote of an indefinite number, the common-law rule is that a plurality of votes elects, that is, the candidate getting more votes than any other is elected, although he does not get a majority of the votes cast, and hence it makes no difference that there are absent voters or blank votes cast."

In *Louisville & Nashville Railroad Co.* v. *Davidson County,* 1 Sneed, 691, 62 Am. Dec., 424, the court had under consideration a legislative act containing the following language: "Whenever the majority of the voters of either of the above named counties, shall decide in favor of the proposition." The court said:

"When a question or an election is put to the people, and is made to depend on the vote of a majority, there can be no other test of the number entitled to vote but the ballot box. If, in fact, there be some, or many, who do not attend and exercise the privilege of voting, it must be presumed that they concur with the majority who do attend, if indeed they can be known at all to have an existence. . . . It would be competent for the legislature to prescribe a different rule. But, when they simply refer a question to the decision of a majority of the 'voters of a county,' it cannot be understood that they mean anything more than those who see fit to exercise the privilege."

In *Montgomery County* v. *Trimble,* supra, the court of appeals of Kentucky used this language:

"Before reaching a conclusion that those who framed our fundamental law intended to change a well-settled policy by allowing the voter who is silent and expresses no opinion on a pubic question to be counted the same

as the one who takes an interest in and votes upon it, we should be satisfied that the language used clearly indicates such a purpose."

If the words appearing in our Constitution, "and when upon such submission, a majority of all the votes cast shall be in favor of said proposition," may be transposed, and be made to read, "and when a majority of all the votes cast upon such submission shall be in favor of said proposition," then the two expression will mean one and the same thing.

We are of the opinion, therefore, that the chancellor was correct in holding that chapter 119 was a valid enactment.

We now come to a consideration of the second question, and that is, Does the Constitution require the election of delegates to be held after the election upon the question of calling a convention has been held, and after the result has been ascertained, determined, and officially announced, or can both questions be voted upon in and at one and the same election, and upon the same ballot, as provided by chapter 118?

We think the language appearing in section 3, article 11, of our Constitution, "when upon such submission, a majority of all the votes cast shall be in favor of said proposition, then delegates shall be chosen," clearly forbids the election of delegates until after the question of holding a constitutional convention has been determined by a vote of the people. We think said language is not susceptible to any other construction. As before stated, this provision originated with our present Constitution. When the Constitution fixes an order of time, this is mandatory. *Webb* v. *Carter,* 129 Tenn., 182, 165 S. W., 426.

The word "then" not only has the meaning of "subsequent in time," but it may also mean "in that event," "upon that contingency," "in that case," etc. 38 Cyc., 278, 279.

The word "then" may also mean "at that time" as contended by complainants. 8 Words and Phrases, p. 6941; 28 Am. & Eng. Ency. Law (2d Ed.), 128.

But the time specified in our Constitution is "when upon such submission, a majority of all the votes cast shall be in favor of said proposition," then delegates shall be chosen.

The uniform construction of this clause of our Constitution by the legislature, extending over a period of nearly forty-five years, supports this conclusion.

(a)  Chapter 138, Public Acts 1919, submitting question. Chapter 186, Acts 1919, providing for election of delegates.

(b)  Chapter 23, Acts of 1917, submitting question. Chapter 24, Acts 1917, election of delegates.

(c)  Chapter 110, Acts 1915, submitting question. Chapter 111, Acts 1915, election of delegates.

(d)  Chapter 11, Acts 1897, submitting question. Chapter 12, 1897, election of delegates.

(e)  Chapter 1, Extra Session 1896, submitting question. Chapter 2, Extra Session 1896, election of delegates.

(f)  Chapter 146, Acts 1881, submitting question. Chapter 125, Acts 1881, election of delegates.

In every instance the election of delegates is conditioned on the Governor making the proclamation.

The practical construction of the legislature, extending over a period of so many years, is entitled to great

weight in construing this provision of our Constitution.

Judge COOLEY, in speaking of the revision and amendment of State Constitutions, used this language:

"But the will of the people to this end can only be expressed in the legitimate modes by which such a body politic can act, and which must either be prescribed by the Constitution, whose revision or amendment is sought, or by an act of the legislative department of the state, which alone would be able to speak for the people upon this subject, and to point out a mode for the expression of their will in the absence of any provisions for amendment or revision contained in the Constitution itself." Cooley's Constitutional Limitations (4th Ed.), pp. 39, 40.

In 12 Corpus Juris, p. 682, it is stated:

"The people of the State, by reason of the sovereign power vested in them, may alter or amend their Constitution. The Constitutions of the several States respectively prescribe the method by which they may be amended or revised; and a particular Constitution may be changed only by the method therein prescribed. A change effected in any other way is revolutionary, and lies wholly outside the domain of law."

This provision of the Constitution is not merely directory, as urged by complainants, but is mandatory.

Judge COOLEY, in his work on Constitutional Limitations (5th Ed.), pp. 93, 94, says:

"Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised. . . . If directions are given respecting the times or modes of proceeding, in which a

power should be exercised, there is at least a strong presumption that the people designed that it should be exercised in that time and mode only."

In *Webb* v. *Carter,* supra, this court quoted with approval the following language contained in 8 Cyc., 762:

"So, also, all provisions that designate in express terms the time or manner of doing particular acts, and are silent as to performance in any other manner, are mandatory, and must be followed."

In *State* v. *McCann,* 72 Tenn. (4 Lea.), 10, this court, quoting from Judge COOLEY in his work on Constitutional Limitations, said:

"For the will of the people, as declared in the Constitution, is the final law; and the will of the legislature is only law when it is in harmony with, or at least is not opposed to, that controlling instrument which governs the legislative body equally with the private citizen. . . . To say a provision is directory seems, with many persons, to be equivalent to saying that it is not law at all. That this ought not to be so must be conceded; that it is so we have abundant reason and good authority for saying. . . . A constitutional provision [if it] is to be enforced at all, . . . must be treated as mandatory; and, if the legislature habitually disregard it, it seems to us that there is all the more urgent necessity that the courts should enforce it."

Certainly the people, through their representatives, were vested with power to regulate and prescribe when and how delegates to any succeeding constitutional convention should be selected, and such provision is binding on the legislature.

We think, therefore, that the chancellor correctly held that chapter 118 was invalid and of no binding force. His decree is in all things affirmed.

One-half of the costs will be taxed against complainants, and the other half will be taxed against the State.

GREEN, C. J., concurs in the result reached by the court.