Ben West, Mayor, etc.

*v.*

Joe C. Carr, Secretary of State, et al.

370 S. W. 2d 469.

*(Nashville,* December Term, 1962.)

Opinion filed May 10, 1963.

HARRIS A. GILBERT and Z. T. OSBORN, JR., Nashville, DENNY, LEFTWICH & OSBORN, Nashville, ROBERT JENNINGS, City Attorney, Nashville, of counsel, for complainants.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville, for Joe C. Carr.

SHELTON LUTON, Davidson County Attorney, Nashville, for Commissioners of Election for Davidson County.

EDWIN F. HUNT, Nashville, amicus curiae on behalf of Tennessee Farm Bureau Federation, Inc., et al.

MR. JUSTICE FELTS delivered the opinion of the Court.

This suit was brought by Ben West, as Mayor of the City of Nashville and as a voter and taxpayer of Davidson County, under the Declaratory Judgments Act (T.C.A. secs. 23-1101 to 23-1113), seeking a decree declaring Chapter 2, Acts 1962, unconstitutional and enjoining the defendants, the Secretary of State, the Attorney General, and the Election Commissioners of Davidson County, from expending any public funds or holding the elections provided for by the Act.

This Act was passed June 7, 1962, at the extra session of the Legislature. It is an Act submitting to a vote of the people of Tennessee, in one of the modes prescribed by the Constitution of Tennessee (Art. 11, sec. 3, par. 2), proposals to alter, reform or abolish certain parts of the Constitution, to wit:

Article 2, section 3 (dealing with the Legislative Department and the terms of office of its members), sections 4, 5 and 6 (relating to apportionment of Legislative seats), section 7 (fixing time of elections of members of the Legislature), section 8 (fixing time of the session of the Legislature and inauguration of the Governor), section 11 (prescribing rules of legislative procedure), sections 15 and 16 (relating to vacancies in the Legislature and adjournments of each House), and section 23 (compensation of the members).

The Act provides that at the general election to be held on Tuesday after the first Monday in November 1962, there shall be submitted to the people of Tennessee, voting at large, the question of holding a constitutional convention limited to consideration of proposals to alter, reform or abolish these sections of Article 2 of the Constitution; and that the question shall be submitted in the form which shall be printed in full on each ballot or voting machine as follows:

## "CONSTITUTIONAL

## REFERENDUM

Shall a convention be held to alter, reform or abolish the following provisions and subject matter of the Constitution of Tennessee, to wit: * * * [setting out the article and sections and subject matter above stated], which convention shall be limited to consideration of and action upon these sections and the subject matter hereinabove set forth, *the action of such convention to become effective as to each amendment adopted by the convention only after being separately submitted to and ratified by the voters of the State?*

FOR THE CONVENTION ———

AGAINST THE CONVENTION ———

Voters will indicate and vote by placing a cross mark opposite one or other of the above expressions."
(Italics ours.)

It further provides that if a majority of the votes cast in that election (Nov. 6, 1962) shall be in favor of the convention, delegates to such convention shall be elected by the people in the general election in August 1964, "in the several counties and floterial districts and each such county and floterial district shall elect one delegate for each representative to which it is entitled in the House of Representatives of the General Assembly, at the time of the passage of this Act."

It also provides that the delegates so chosen in the election in August 1964 shall meet in convention in Nashville on the last Monday in July 1965; that such convention shall be limited to the matters aforesaid; and that any proposal the convention may adopt as to any of such matters "shall be separately submitted to the voters of the State for ratification or rejection" in an election on a date to be fixed by the convention; and that only such proposal or proposals as shall be so ratified shall become part of the Constitution.

Complainant charged in his bill that this apportionment of delegates to the convention is upon the same basis as that of the House of Representatives in the Legislative Apportionment Act of 1901 (ch. 122, T.C.A. secs. 3-101 to 3-107), which is alleged to have been held unconstitutional and void in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; and that this apportionment

is likewise unconstitutional in that it unreasonably discriminates in favor of voters in sparsely populated rural counties and against complainant and other voters in densely populated urban counties, by giving the former proportionately more representation than the latter, and thus depriving them of their rights under the Constitution of Tennessee (Art. 1, sec. 5, Art. 11, sec. 8), and deny them "the equal protection of the laws" under the Fourteenth Amendment to the Federal Constitution.

It was further charged that by this malapportionment of delegates in the constitutional convention, the General Assembly of Tennessee intended "to devise and accomplish a scheme and plan whereby the requirements of the Constitution of Tennessee and of the United States might be circumvented and your complainant's right to reasonable equality of representation in the General Assembly of Tennessee abridged."

Officials of the cities of Memphis, Knoxville, and Oak Ridge filed intervening petitions, and were permitted to join in the bill of complainant, and adopt its allegations and prayers for relief.

Defendants denied complainants had any interest to attack the Act, denied it was unconstitutional, and averred it was merely the means provided for submitting to the people proposals to amend the Constitution, which proposals could have no effect unless and until they should be separately ratified by a vote of the people of the State at large, where every qualified voter is entitled to vote and every vote is given the same weight.

The cause was heard upon bill and the answers. The Chancellor expressed the opinion that the Tennessee Legislative Apportionment Act of 1901 was held uncon-

stitutional and void in *Baker v. Carr,* supra; and upon authority of that case, he held that this 1962 Act was unconstitutional, but refused to enjoin the holding of the election under it, recognizing this principle:

"Voters ordinarily have no such special interest in the matter as will justify them in seeking an injunction. *Further, no one can tell what the result of an election will be and no complainant can say that he will be adversely affected by an election."* (Italics ours.) (Chief Justice Green, *Buena Vista School Dist. v. Bd. of Election Com'rs.,* 173 Tenn. 198, 201, 116 S.W.2d 1008.)

From that decree defendants appealed to this Court. On October 22, 1962, in advance of a hearing here, complainants presented a petition to a member of this Court to enjoin the holding of the election under this Act. That application was denied, the election was held November 6, 1962, and the convention was authorized by a vote of the majority of the people of the State voting in such election.

Thereafter, the case was heard here. The Tennessee Farm Bureau Federation, Inc., Clyde M. York and Fenner Heathcock, by able counsel, filed an amicus curiae brief in support of the Act. Defendants submit that the Chancellor erred (1) in holding the Act unconstitutional and (2) in rendering a declaratory decree to that effect, since none of those attacking the Act shows himself to be adversely affected by it.

The argument for complainant is that *Baker v. Carr* (369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; same case, D.C. 206 F.Supp. 341) held unconstitutional Tennessee's Act of 1901, which apportioned members in its House of

Representatives upon the same basis as this 1962 Act apportions delegates to the constitutional convention; that membership in the convention is as important as membership in the House; and that an apportionment which is void as to one must be void as to the other.

## I.

In *Baker v. Carr,* as we understand, there has been no final judgment or decision on the merits; and though no one can now say how far that case may go, we think it cannot be extended to a case like this. Complainant's reliance upon it overlooks the fundamental difference between a legislative body and a constitutional convention; and his attack on this Act is not an attack upon a legislative apportionment, like *Baker v. Carr,* but a challenge of the right of the people of Tennessee to amend their Constitution in the mode provided by it.

That Constitution (Art. 2, sec. 1) divides the powers of government into the Legislative, Executive, and Judicial Departments, and forbids (Art. 2, sec. 2) any person in one department to exercise any of the powers of another; and (Art. 2, sec. 3) vests the legislative authority in a bicameral General Assembly—a Senate and a House of Representatives. Thus, the Legislature has the final power *to make law.*

A constitutional convention, however, has no power to take any final action, but can only propose constitutional changes for ratification or rejection by the people. This Act, as well as the convention it provides for, is merely part of the machinery of the amending process. In passing this Act, the Legislature exercised not its legislative power, but its special function in initiating proposed amendments to the Constitution.

Our State Constitution (Art. 1, sec. 1) declares that *"all power* is inherent in the people," and that they have a "right to alter, reform or abolish the government in such manner as *they may think proper* (italics ours) ; and the only limitation placed by it on the manner of their exercise of this right, is in its provision for its amendment (Art. 11, sec. 3).

That section provides two modes of amendment: (1) by an amendment proposed by two successive Legislatures and ratified by a vote of the people (Art. 11, sec. 3, par. 1) ; and (2) by an act of the Legislature providing for a convention, and its submission of proposals to, and ratification by, the people, as provided in paragraph 2 of this article and section, which is as follows:

"The Legislature shall have the right by law to submit to the people, at any general election, the question of calling a convention to alter, reform, or abolish this Constitution, or to alter, reform or abolish any specified part or parts of it; and when, upon such submission, a majority of all the voters voting upon the proposal submitted shall approve the proposal to call a convention, the delegates to such convention shall be chosen at the next general election and the convention shall assemble for the consideration of such proposals as shall have received a favorable vote in said election, *in such mode and manner as shall be prescribed. No change in, or amendment to, this Constitution proposed by such convention shall become effective,* unless within the limitations of the call of the convention, and *unless approved and ratified by a majority of the qualified voters voting separately on such change or amendment* at an election to be held in such manner

and on such date as may be fixed by the convention.
* * *" (Art. 11, sec. 3, par. 2.) (Italics ours.)

In passing this Act (ch. 2, Acts 1962), the Legislature was acting as a special agency under the provisions above quoted (Art. 11, sec. 3, par. 2), and was not exercising its legislative authority (Art. 2, sec. 3) as it did in passing the Legislative Apportionment Act of 1901 involved in *Baker v. Carr*. This distinction has been recognized in many authorities, a few of which we quote:

"The right to propose amendments to the Constitution is not the exercise of legislative power by the General Assembly in its ordinary sense, but such power is vested in the Legislature only by the grant found in the Constitution, and such power must be exercised within the terms of the grant." *Chicago v. City of Reeves*, 220 Ill. 274, 77 N.E. 237.

"In submitting propositions for the amendment of the constitution, the legislature is not in the exercise of its legislative power, or of any sovereignty of the people that has been entrusted to it, but is merely acting under a limited power, conferred upon it by the people * * *." *Livermore v. Waite*, 102 Cal. 113, 36 P. 424, 25 L.R.A. 312.

"A constitutional convention is not a coordinate branch of the government. It exercises no governmental power, but is a body raised by law, in aid of the popular desire to discuss and propose amendments, which have no governing force so long as they remain propositions. *People who,* acting under a proper resolution of the legislature, *vote in favor of calling a constitutional convention are presumed to ratify the terms of the legislative call, which thereby becomes the basis of*

*the authority delegated to the convention."* (Italics ours.) 11 Am.Jur., Constitutional Law, sec. 27, p. 631.

The Constitution of Tennessee recognizes the fundamental difference between the power of its General Assembly to take final action—i. e., *to make law*—and the narrowly limited power of a constitutional convention to propose changes for submission to a vote of the people. It does this by making totally different provisions for the membership or composition of the two different bodies.

It makes provision for apportionment of the members of the General Assembly (Art. 2, secs. 5 and 6), among the several counties and districts upon the basis of the qualified voters in each; but it makes no provision for apportionment of the membership of the constitutional convention; instead, it provides the delegates "shall be chosen at the next general election * * * *in such mode and manner as shall be prescribed"*; that is, as shall be prescribed by the Legislature in the act providing for the constitutional convention.

Complainant does not, and could not, claim that this Act violates any of the provisions of the Tennessee Constitution which specify the manner in which it shall be amended, as did the legislative Act in *Derryberry v. State Board of Election Com'rs.,* 150 Tenn. 525, 260 S.W. 102, relied on by complainant, but not in point here. As we understand, his claim is that this Act debases his vote so as to violate the state and federal Constitutions, within the holding of *Baker v. Carr.*

The basis of that holding seems to be that a legislative malapportionment which results in persons being taxed and governed by law, without reasonably equal or

fair representation, violates their constitutional rights. No such effect can be attributed to this Act. It is really not a *law* in the usual sense, not passed in the exercise of any legislative authority, but is merely a part of the amending process of the Constitution; and does not take effect by its own terms, but only upon a favorable vote of the people.

The basic principle here involved was considered in *Cummings v. Beeler,* 189 Tenn. 151, 223 S.W.2d 913. There, the argument was made that the Act (ch. 49, Acts 1949), providing for a limited constitutional convention, was unconstitutional because the Legislature, as the Constitution then stood, had no power to limit the convention. In overruling that contention, the Court, in an opinion by Mr. (now Chief) Justice Burnett, said:

"The power to 'alter, reform or abolish' the Tennessee Constitution resides in the people, not in the Legislature. The people are possessed with ultimate sovereignty and are the source of all State authority. The people have the ultimate power to control and alter their Constitution, subject only to such limitations and restraints as may be imposed by the Constitution of the United States."

"It is *not the legislature who limit the scope of a convention but it is the people* themselves *who by their vote under the terms of this act limit the scope of the convention.*" (Italics ours.) (189 Tenn. 175-176, 223 S.W.2d 923.)

As there pointed out by the Court, "the controlling element" in a case like this is not the legislative act, nor the constitutional convention, but the approval and ratification of the terms of the Act by the vote of the people;

and the delegates to the convention "derive their whole authority and commission from such vote." Among the other cases there discussed and approved was *Staples v. Gilmer,* 183 Va. 613, 33 S.E.2d 49, 158 A.L.R. 495, 501, which quoted with approval this principle:

"* * * People who, acting under a proper resolution of the legislature, vote in favor of calling a constitutional convention are presumed to *ratify the terms of the legislative call,* which thereby *becomes* the *basis of the authority delegated* (by the people) *to the convention.* * * *"

As we have seen, the people of Tennessee, voting not by counties and districts, but voting in the State at large, in the November 6, 1962 election, voted for the convention, as provided and constituted by this Act. The legal effect of this vote was that the people made it their act, in all its terms, including the manner of choosing the delegates to the convention. Otherwise stated, this vote of the people of the State at large must be taken as an expression of their will and as their act and deed.

In that election every qualified voter in the State was entitled to vote and every vote was given the same weight, whether the voter resided in the largest urban county or the smallest rural county. There is no claim that there was any malapportionment or any debasement of any vote; nor can it be said that this Act, as thus ratified by the people of the State, deprived complainant or any other person of any right under the Constitution of Tennessee or of the United States.

This conclusion is reinforced when it is considered that neither the delegates nor the convention can take any final action, but are strictly limited to the subjects

specified in the call, and as to them, can only make proposals which can have no effect unless and until they are ratified in another election by a vote of the people of the State at large, where every qualified voter will be entitled to vote and every vote given the same weight.

## II.

So, clearly, there is no ground for complainant's attack upon this Act. Of course, .if the convention should propose, and the people of the State should ratify, an amendment which should be in conflict with the Federal Constitution and should adversely affect complainant, he would then have his remedy. Upon such showing by him, it would be the duty of the courts, state and federal, under the "supremacy clause," to declare such amendment void to the extent of the conflict.

But such duty can arise only after such a case has been presented. Manifestly, it is now impossible to predict what the convention may do—what proposal or proposals it may make; and it is equally impossible to foretell whether, if any proposal or proposals are submitted, the people, by their vote, will ratify or reject them.

In these circumstances, it is plain that complainant's bill fails to state a cause under our Declaratory Judgments Act. That Act deals only with present rights that have accrued under presently existing facts. It gives the Court no power to determine future rights or possible controversies in anticipation of events that may not occur. *Ball v. Cooter et al.,* 185 Tenn. 631, 634, 207 S.W.2d 340, 342; *Coleman v. Henry,* 184 Tenn. 550, 554, 201 S.W.2d 686; *Jared et al. v. Fitzgerald et al.,* 183 Tenn. 682, 688, 689, 195 S.W.2d 1, 4; *Newsum v. Interstate Realty Co.,*

152 Tenn. 302, 278 S.W. 56; Annotations, 12 A.L.R. 52, 69, 87 A.L.R. 1205, 1215-1219.

■ It does not enable courts to give advisory opinions upon what the law would be upon a theoretical or hypothetical state of facts. *Hodges v. Hamblen County,* 152 Tenn. 395, 399, 277 S.W. 901; *Ball v. Cooter et al.,* supra; *Jared et al. v. Fitzgerald et al.,* supra.

■ ''We will not pass on the constitutionality of a statute, or any part of one, unless it is absolutely necessary for the determination of the case and of the present rights of the parties to the litigation. *Phillips v. West,* 187 Tenn. 57, 213 S.W.2d 3, 5'' (*State ex rel. Loser v. National Optical Stores Co.,* 189 Tenn. 433, 444, 225 S.W. 2d 263, 268.) *State ex rel. West v. Kivett,* 203 Tenn. 49, 56, 308 S.W.2d 833.

The rule is the same, we understand, in the federal courts. ''Claims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention. *Arizona v. California,* 283 U.S. 423, 462, 51 S.Ct. 522, 75 L.Ed. 1154 [1169].'' *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 324-325, 56 S.Ct. 466, 472-473, 80 L.Ed. 688, 699.

Under the Federal Declaratory Judgment Act, as we understand, the rule is this: ''It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts'' (citing cases). *Aetna Life Ins. of Hartford Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621; *Electric Bond & S. Co. v. Securities & Exch. Com.,* 303 U.S. 419, 443, 58 S.Ct. 411, 82 L.Ed. 936, 948.

"This Court, as is the case with all federal courts, 'has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered; one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied' " (citing cases). *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529.

For these reasons, we conclude that the Chancellor erred in holding this Act unconstitutional and in rendering a declaratory decree to that effect. The decree below is reversed, the bill is dismissed, and the costs are adjudged against complainant and the sureties on his cost bill.

## On Petition to Rehear

Complainant has filed a petition for a rehearing upon our holding that his bill failed to show any invasion of any right of his, federal or state, and failed to state a cause under our Declaratory Judgments Act (T.C.A. secs. 23-1101 to 23-1113); and, in an effort to support the petition, learned counsel make an able and earnest argument; but it is only a re-argument of matters already considered and determined by us. It points out no decisive matter of law or fact overlooked, but only re-argues matters which counsel say were improperly decided.

Such a petition presents no ground for a rehearing. "The office of a petition to rehear is to call the

attention of the court to matters overlooked, not those things which the counsel supposes were improperly decided after full consideration." *Louisville & N. Railroad Co. v. United States Fidelity & Guaranty Co.,* 125 Tenn. 658, 691, 148 S.W. 671, 680; *Austin v. Jennings,* 211 Tenn. 485, 365 S.W.2d 886, 889.

The petition is denied at petitioner's cost.

On July 22, 1964, the United States Supreme Court dismissed the appeal in this case for want of jurisdiction.