ILLUSTRATION DESIGN GROUP, INC., et al.,
Plaintiffs-Appellants,

*v.*

GEORGE F. McCANLESS et al., Defendants-Appellants.

454 S.W.2d 115

(*Nashville,* December Term, 1969.)

Opinion filed May 4, 1970.

JAMES C. DALE, III, and ROBERT H. DEDMAN, Nashville, for plaintiff-appellant, Illustration Design Group, Inc.

JAMES M. MANIRE and FRIERSON M. GRAVES, JR., Memphis, for intervenor-appellant, City of Memphis.

EUGENE COLLINS and RANDALL L. NELSON, Chattanooga, for intervenor-appellant, City of Chattanooga.

W. RAYMOND DENNEY and CLIFFORD ALLEN, Nashville, for intervenor-appellant, Clifford Allen, Metropolitan Tax Assessor of Nashville-Davidson County, Tenn.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, Deputy Attorney General, PAUL JENNINGS, Assistant Attorney General, and EDWIN F. HUNT, Special Counsel, Nashville, for defendants-appellants, George F. Mc-Canless, Joe C. Carr, William Snodgrass, Harlan Matthews and Charles E. Worley.

MR. JUSTICE FELTS, Retired, delivered the opinion of the Court.

This suit was brought by the Illustration Design Group, Inc., a Tennessee corporation, suing as a taxpayer, under the Declaratory Judgments Act[1] seeking a decree declaring Chapter 421, Public Acts of 1968 (as amended), unconstitutional and enjoining official action thereunder by defendant state officials, George F. McCanless, Attorney General; Joe Carr, Secretary of State; William Snodgrass, Comptroller; Harlan Matthews, Commissioner of Finance and Administration; and Charles E. Worley, Treasurer.

---

[1] T.C.A. 23-1101 et seq.

This Act [2] provided that at the next general election, to be held on November 5, 1968, there should be submitted to a vote of the people of Tennessee five questions, each to be printed on the ballot or voting machine and voted on separately, on whether a constitutional convention should be called to alter, reform or abolish certain parts of the Constitution of the State of Tennessee in the particulars set out in each question, the authority and action of such convention to be limited as defined in said act.

The Act also provided that if a majority of the votes cast in that election should be in favor of calling such convention on any of the five questions, delegates to the convention should be elected by the people at the general election to be held on August 6, 1970, and the delegates should meet in convention at Nashville on August 2, 1971; and that the authority and action of the convention shall be limited as specified in such questions as had been approved by the vote of the people.

The Act further provided that any of such proposals which the convention might adopt shall be separately submitted to a vote of the people of Tennessee for ratification or rejection at an election to be held on a date to be fixed by the convention; and that only such proposal or proposals as shall be so ratified shall become part of the Constitution.

In the election held November 5, 1968, a majority of the votes cast were against calling a convention on all of the five questions submitted except Question No. 3.

---

[2] Ch. 421, Acts 1968 (passed Feb. 28, and amended by Ch. 597, Apr. 3, 1968).

Question No. 3 was approved by a majority of the vote in 91 of the 95 counties of the State, such majority exceeding 120,000. Then followed this suit attacking so much of the Act as constitutes Question 3. We set out the part of it here involved:

"BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. In order to ascertain the will of the people with respect to whether or not a limited constitutional convention should be called, there shall be submitted to the people of the state at the general election to be held on Tuesday, November 5, 1968, five questions, each of which shall be printed in full on each ballot or voting machine, in words and figures as follows:

CONSTITUTIONAL REFERENDUM

\* \* \* \* \* \*

FOR THE CONVENTION
AGAINST THE CONVENTION

Voters will indicate their choice by placing a cross mark (X) opposite one or the other of the above expressions.

Question 3. Shall a convention be called to alter and reform Article II, Section 28 of the Constitution so as to require the classification of property into three classes for purposes of taxation, to wit:

Real Property                    .

Intangible Personal Property

Tangible Personal Property

'Provided that said Convention shall classify Real Property only into four (4) subclassifications, to wit:

'(a) Public Utility Property, to be assessed at not less than 45 per cent or more than 55 per cent of its value, the exact percentage to be fixed by the convention;

'(b) Industrial and Commercial Property, to be assessed at not less than 35 per cent or more than 45 per cent of its value, the exact percentage to be fixed by the convention;

'(c) Residential Property, to be assessed at not less than 25 per cent or more than 35 per cent of its value, the exact percentage to be fixed by the convention; and

'(d) Farm Property, to be assessed at not less than 20 per cent or more than 25 per cent of its value, the exact percentage to be fixed by the convention.

'Exemption of Tangible Personal Property. Said Convention shall further provide and establish an exemption, which shall cover a taxpayer's personal household goods and furnishings, wearing apparel and other such tangible property, the total of which exemption shall not be less than $5,000.00 or more than $7,500.00, as shall be determined by the Convention.

'Exemption of Intangible Personal Property. The Convention shall further provide that money deposited in an individual's personal or family checking or savings account shall be exempt from taxes, in an amount to be determined by the convention.

'No exemptions other than those specified herein shall be authorized by the Convention in the case of either tangible personal property or intangible personal property.

'The ratio of assessment to value of property in each class or sub-class, as shall be established by the convention, shall be equal and uniform throughout the State, and each respective taxing authority shall apply the same tax rate to all property within its jurisdiction.

'Said Constitutional Convention, if called, shall not be authorized to amend the Constitution so as to permit a personal income tax, except as already authorized under the present Constitution; and the said Convention, if called, may consider the further provision of Article 2, Section 28, but no action taken shall be in conflict with the provisions hereof.' "

Plaintiff alleged in its declaration that the Act is unconstitutional because (1), in Question 3, it violates the provision (Art. 11, sec. 3) for amending the Constitution, in that the Legislature there transgressed the limits of its power and usurped the function of the Convention, by undertaking to dictate the specific terms of the amendments to be proposed; and (2) because the tax classifications proposed would unjustly discriminate against Plaintiff as a taxpayer.

To the declaration, Defendants filed a demurrer containing seven grounds: (1) that it failed to show Plaintiff had any standing to maintain the suit or (2) that any justiciable issue existed; and the other grounds (3-7), in different ways, challenged the sufficiency of the declaration to show any constitutional infirmity in the Act.

Clifford Allen, as a citizen and taxpayer, was permitted to intervene as a party defendant.

The Cities of Memphis and Chattanooga were allowed to intervene as parties plaintiff, adopting the averments of Plaintiff, also averring that the amendments proposed in Question 3, if adopted as part of the Constitution, and if given effect by statute, would cause each of them great loss of revenues and unjustly discriminate against them, in violation of the 14th Amendment of the Constitution of the United States; Defendant's demurrer to Plaintiff's declaration being ordered to stand also as a demurrer to these intervening petitions.

The case was heard upon the pleadings and the Trial Judge filed an opinion, ordering it to be made a part of the record, holding the Act constitutional, sustaining grounds 3 and 4 of the demurrer, overruling the other grounds, and dismissing the suit. All the parties appealed and all assigned errors except Intervenor Clifford Allen, who filed a brief supporting the constitutionality of the Act.

The main issue presented by the assignments of error is whether the Act is unconstitutional; whether, in Question 3, the Legislature overstepped the limits of the authority delegated to it by the Constitution (Art. 11, sec. 3), and usurped that of the Convention, by undertaking to dictate to the Convention the specific terms of the amendments to be proposed; and since, in the view we take of it, this issue is determinative of the whole case, we think we may properly confine our consideration to it and pretermit all the other questions sought to be raised.

292

■ It must be borne in mind that the power to alter, reform or abolish the Constitution of Tennessee resides in the people, not in the Legislature nor in a constitutional convention. *Cummings, Sec. of State v. Beeler,* 189 Tenn. 151, 179 223 S.W.2d 913, 924; *Derryberry v. State Bd. of Election Commissioners,* 150 Tenn. 525, 537, 266 S.W. 102. In the latter case it is said:

" 'The people of the state, by reason of the sovereign power vested in them, may alter or amend their Constitution. The Constitutions of the several states respectively prescribe the method by which they may be amended or revised; and a particular Constitution may be changed only by the method therein prescribed. A change effected in any other way is revolutionary, and lies wholly outside the domain of law' " (150 Tenn. 537, 266 S.W. 105).

This general statement of the fundamental law of Tennessee is reinforced when we look to the provisions of our Constitution respecting the methods for its modification, which we may conveniently consider in three parts:

Part one: "That *all power* is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety and happiness; for the advancement of those ends they have at all times, an unalienable and indefeasible *right* to alter, reform, or abolish the government *in such manner as they may think proper*" (italics ours) (Const., Art. 1, sec. 1; T.C.A. Vol. 1, p. 211).

Part two: This provides that any amendment may be proposed in the Senate or the House of Representatives, and if agreed to by a majority of all the members elected

to both houses, it shall be referred to the General Assembly next to be chosen, and if, in such assembly, it shall be agreed to by two-thirds of all the members elected to each house, then it shall be submitted to a vote of the people for their ratification or rejection at the next general election at which a Governor is to be chosen (Art. 11, sec. 3, par. 2; T.C.A. Vol. 1, p. 706).

> Part three: "The Legislature shall have the right by law to submit to the people, at any general election, the question of calling a convention to alter, reform, or abolish this Constitution, or to alter, reform or abolish any specified part or parts of it; and when, upon such submission, a majority of all the voters voting upon the proposal submitted shall approve the proposal to call a convention, the delegates to such convention shall be chosen at the next general election and the convention shall assemble for the consideration of *such proposals as shall have received a favorable vote in said election*, in such *mode* and *manner as shall be prescribed.* No change in, or amendment to, this Constitution proposed by such convention shall become effective, *unless within the limitations of the call* of the convention, and unless approved and ratified by a majority of the qualified voters voting separately on such change or amendment at an election to be held in such manner and on such date as may be fixed by the convention. No such convention shall be held oftener than once in six years" (italics ours) (Art. 11, sec. 3, par. 2; T.C.A. Vol. 1, p. 706).

Thus, it is seen that *"all* power is inherent in the people," and they have a *"right* to alter, reform or abolish" their Constitution *in such manner as they may think proper,* subject only to any restraints imposed in

the Constitution of the United States or by the people themselves in the Constitution of Tennessee. *Cummings, Sec. of State v. Beeler,* supra, 189 Tenn. 175-176, 223 S.W.2d 913. And the only limitations placed by them upon the manner of their exercise of this right, are the provisions for amendment above referred to (Art. 11, sec. 3). *West v. Carr,* 212 Tenn. 367, 375, 370 S.W.2d 469, 472, app. dismissed, 378 U.S. 557, 84 S.C. 1908, 12 L.Ed. 2d 1034.

■ It is clear that, by these provisions, the people, as the reservoir of all sovereign power of the State, have delegated to the Legislature the authority and power to initiate change in their Constitution, subject to their final adoption or rejection by popular vote. They have provided for this by two methods:

(1) By the first, they have delegated to the Legislature power, not to be confused with its authority as a department of government (authority to pass ordinary statutes) (Art. 11, secs. 1-3), but authority as an agency to propose amendments in our fundamental law, subject to final approval by vote of the people; and

(2) They have also delegated to the Legislature the power to pass an act providing for the creation of a constitutional convention, delineating the scope and powers of such convention, and providing for submission to a vote of the people the question whether such convention shall be called (Art. 11, sec. 3, par. 2, supra). *Cummings, Sec. of State v. Beeler,* supra, 189 Tenn. 175-178, 223 S.W.2d 913; *Staples v. Gilmer,* 183 Va. 613, 33 S.E.2d 49, 158 A.L.R. 495, 515; *West v. Carr,* supra, 212 Tenn. 378-379, 370 S.W.2d 469.

And they have delegated authority to the Legislature to exercise its discretion as to which one of these methods it will pursue in proposing amendments to the Constitution for ratification or rejection by vote of the people (*Cummings, Sec. of State v. Beeler,* supra, 189 Tenn. 170, 223 S.W.2d 913) ; and when it has exercised its discretion to pursue the second method and has passed an act providing for a convention, defining its scope and powers, and providing for submission to a vote of the people the question of whether such convention shall be called, and such call has been approved by vote of the people, it is not the Legislature but the people who limit the authority and scope of the convention. *Cummings, Sec. of State v. Beeler,* supra, 189 Tenn. 175, 223 S.W.2d 913.

When such an act has been passed by the Legislature providing for a convention to alter, reform or abolish the Constitution, or. *"any specified part or parts of it,"* and such Act has been approved by a vote of the people, as the act before us has been, it becomes the act of the people and the sole basis of the authority of the convention, and the delegates to the convention "derive their whole authority and commission from such vote." *Staples v. Gilmer,* supra; *Cummings, Sec. of State v. Beeler,* supra, 189 Tenn. 175, 223 S.W.2d 913; *West v. Carr,* supra, 212 Tenn. 378-379, 370 S.W.2d 469.

It will be observed that, by the provision of the Constitution above quoted (Art. 11, sec. 3, par. 2), the people have not only delegated authority to the Legislature to propose the call for a convention, and thus limit and define the scope and action of such convention, but they have expressly limited the consideration and action of the convention to the proposals already approved by a

vote of the people and within the limits of the call, by this language:

> "* * * and the convention shall assemble for the consideration of *such proposals as shall have received a favorable vote in said election,* in such mode and manner as shall be prescribed. No change in, or amendment to, this Constitution proposed by such convention shall become effective, unless *within the limitations of the call* of the convention, and unless approved and ratified by a majority of the qualified voters, voting separately on such change or amendment * * *." (Art. 11, sec. 3, par. 2).

■ For these reasons, we conclude that the Legislature, in Question 3, did not overstep its constitutional authority; that the Act is constitutional and the learned Trial Judge properly so held. We think, however, instead of dismissing the suit, that court should have entered a declaratory decree adjudging the Act to be constitutional. Such a decree will accordingly be entered in this Court. The costs are adjudged against Plaintiff and the sureties on its cost bond, and appeal bond, and against the intervenors, the Cities of Chattanooga and Memphis, and the sureties on their appeal bonds.

DYER, CHIEF JUSTICE, and CHATTIN, CRESON, and HUMPHREYS, JUSTICES, concur.