**SOUTHERN RAILWAY COMPANY and South Central Bell Telephone Company, Appellants,**

v.

**Hammond FOWLER et al., Appellees.**

Supreme Court of Tennessee.

Aug. 6, 1973.

Clyde W. Key, Knoxville, J. O. Bass, T. G. Pappas, Nashville, for appellants; Raymond Whiteaker, Jr., Nashville, Rexford L. Hawkins, Birmingham, Ala., Bass, Berry & Sims, F. Clay Bailey, Jr., Nashville, Dawson Hall, Chattanooga, Harry W. Laughlin, Memphis, of counsel.

David M. Pack, Atty. Gen., Milton P. Rice, Deputy Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Eugene W. Ward, General Counsel, Public Service Commission, for appellees.

Larry D. Woods, Nashville, for intervenor, Clifford Allen.

William J. Harbison, Nashville, amicus curiae.

## OPINION

CHATTIN, Justice.

In 1968, the legislature, pursuant to the provisions of Article 11, Section 3 of the Tennessee Constitution, enacted Chapter 421, as amended by Chapter 597, of the Public Acts of 1968, which directed that a referendum be conducted at the general election to be held on November 5, 1968, to determine whether a limited constitutional convention should be called to alter, reform or abolish certain parts of the Tennessee Constitution in the particulars set out in each of five questions to be presented to the electorate. It was provided that if a majority of the votes cast in the general election were cast in favor of any of the five questions, an election of delegates was to be conducted at the general election to be held on August 6, 1970.

In the election held on November 5, 1968, a majority of the votes cast were against calling a constitutional convention on all of the five questions submitted, except question three, which called for a limited constitutional convention to alter and reform Article 2, Section 28, of the Tennessee Constitution in certain particular respects. Question three was approved by a majority of the votes cast in ninety-one of the State's ninety-five counties.

Pursuant to the terms of the call presented to the voters on November 5, 1968, an election of delegates was conducted on August 6, 1970. On August 2, 1971, a constitutional convention consisting of delegates elected by the voters convened in Nashville for the purpose of altering and reforming Article 2, Section 28, of the Constitution of Tennessee within the scope of the question three call. The convention duly met and conferred over a proposed amendment to Article 2, Section 28, and on September 14, 1971, adopted Resolution 74, which proposed to amend the constitution by deleting the existing Article 2, Section 28, and by substituting a new Section.

At the regular election held on August 3, 1973, the proposed amendment to Article 2, Section 28, of the Tennessee Constitution was submitted to a vote of the qualified voters for approval and ratification. A majority of those voting in the election voted in favor of the proposed amendment. By its terms, the amendment as ratified by the people became a part of the Tennessee Constitution on January 1, 1973.

On August 29, 1972, the complainant, Southern Railway Company, filed suit in the Chancery Court for Davidson County under provisions of the Declaratory Judgment Act seeking a declaration that in adopting Resolution 74 for submission to the people the limited constitutional convention exceeded its authority as set out in the convention call; and, therefore, the proposed amendment to Article 2, Section 28, of the Constitution is unconstitutional because Article 11, Section 3, of the Con-

stitution prohibits any convention action "unless within the limitations of the call." At a later date, South Central Bell Telephone Company filed suit seeking the same relief and the suits were consolidated.

By way of answer, appellees and intervenor, Clifford Allen, asserted that all of the provisions of the proposed amendment were within the limitations of the call of the convention and therefore constitutional. The suit was heard upon a motion for a judgment on the pleadings pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure. The Chancellor, in a lengthy and well reasoned opinion, declared that the constitutional amendment was constitutionally adopted and, therefore, is valid. We affirm the decree of the Chancellor.

The appellants' argument points to several particular provisions in the constitutional amendment which appellants contend were unconstitutionally adopted because the questioned provisions exceed the "limits of the constitutional call."

The first contention of appellants is that the convention exceeded its authority as defined in the call by sub-classifying tangible personal property and in granting the legislature authority to sub-classify intangible personal property.

The relevant section of the call provides as follows:

"Question 3. Shall a convention be called to alter and reform Article 2, Section 28 of the constitution so as to require the classification of property into three classes for purposes of taxation to-wit:

"Real Property.

Intangible Personal Property.

Tangible Personal Property.

"Provided, that said convention shall classify real property only into four (4) sub-classifications, to-wit:

"(a) Public Utility Property, to be assessed at not less than forty-five per

cent or more than fifty-five per cent of its value, the exact percentage to be fixed by the convention;

"(b) Industrial and commercial property, to be assessed at not less than thirty-five per cent or more than forty-five per cent of its value, the exact percentage to be fixed by the convention;

"(c) Residential property, to be assessed at not less than twenty-five per cent or more than thirty-five per cent of its value, the exact percentage to be fixed by the convention; and

"(d) Farm property, to be assessed at not less than twenty per cent or more than twenty-five per cent of its value, the exact percentage to be fixed by the convention."

Appellants argue that the phrase "provided, that said convention shall classify real property only into four (4) sub-classifications, to-wit:", clearly shows it was the intent of the legislature to authorize the convention to only sub-classify real property and thereby prohibit the sub-classification of tangible and intangible property by the convention.

In order to reach this conclusion, it is obvious appellants have lifted the phrase from context. It is clear the call limited the sub-classification of real property to four classes which are thereafter specifically named.

It is, also, clear the convention was authorized to require the classification of tangible and intangible personal property and to fix "the ratio of assessment to value of property in each class or sub-class * * *."

Furthermore, the Chancellor disagreed with the argument of appellants; and, we think, correctly concluded as follows:

"This detailed specificity of the terms immediately following the phrase 'real property only' indicates to this court that the legislature wanted to tie only the

class of real property to this particular and detailed system of sub-classification."

As pointed out by Counsel for defendants in their brief, there is no ambiguity in the words "said convention shall classify real property only into four (4) sub-classifications, to-wit:"

However, appellants argue the legislature history of the Act providing for the call supports their position. They refer specifically to a speech of Senator Snodgrass, a sponsor of the amendment to the call, in which he said:

"Mr. Speaker, Lady Anderson and Members of the Senate, I cannot add a great deal to what the clerk has already read except to say * * * that this amendment just preempts the amendment Senator Ewell is sponsoring and writes in and insists on writing in more definitive ways the safeguards which you've read or heard about in the last week or so. I want to say in all fairness that what we, or what I'm attempting to do in this amendment could certainly be done under the constitutional convention bill passed by the very fine 'Study Committee,' about which we are very well acquainted; the only difference is that this actually guarantees that it will be done. It writes the percentages into the sub-classification of real property, it provides that there won't be any sub-classification of tangible personal property or intangible personal property and sets up a safeguard as to that effect * * *."

■ If this suit involved simply the interpretation of an ambiguous statute, the consideration of controlling importance to this Court would be legislative intent. Senator Snodgrass' remarks would be one of many aids available to enable this Court to ascertain the legislative intent.

■■ However, legislative intent is not the only consideration of importance when a constitutional amendment is involved. An individual legislator's remarks concern-

ing a constitutional amendment are "of less materiality than in that of an ordinary bill or resolution." Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597 (1899).

■ This is true because there is an important distinction between a legislative enactment which is an end product in and of itself and a legislative enactment which is but an initial step in a constitutional amendatory process. As stated above, in the former situation, legislative intent is a controlling factor in determining the meaning and effect of statutes, and principles of statutory construction have evolved as aids in determining legislative intent. However, in the latter situation where a statute is enacted as the initial step in amending the constitution through the constitutional convention process, the statute has no operative effect until approved by the people. Consequently, it is the people, not the legislature, who call the convention, and their intent and not the intent of the legislature is that which this Court must look to if it becomes necessary to ascertain the intent of anyone. Illustration Design Gp. v. McCanless, 224 Tenn. 284, 454 S.W.2d 115 (1970); Cummings v. Beeler, 189 Tenn. 151, 223 S.W.2d 913 (1949).

Nowhere in the call can there be found any prohibition against the convention from sub-classifying either tangible or intangible property.

The people did not have before them the statement of Senator Snodgrass when they voted on Question Three. They only had the language of the proposed call.

Consequently, the statement of Senator Snodgrass is immaterial.

■ The courts must indulge every reasonable presumption of law and fact in favor of the validity of a constitutional amendment after it has been ratified by the people. 16 Am.Jur.2d Constitutional Law, Section 41, page 214.

For this Court to sustain appellants' position, appellants would have to demon-

strate that the only reasonable interpretation of the phrase in question leads to the conclusion the provisions of the amendment exceed the limits of the call.

■ Appellants, at most, have demonstrated the phrase is ambiguous and can be read so as to make the amendment unconstitutional. Such is not sufficient. This Court is bound by the rule constitutional provisions should be given a broad and flexible interpretation where ambiguities exist. Williams v. Carr, 218 Tenn. 564, 404 S.W.2d 522 (1966).

Finally, should we accept appellants' construction it would render the following paragraph of the call meaningless:

"The ratio of assessment to value of property in each class or sub-class, as shall be established by the convention, shall be equal and uniform throughout the State, and each respective taxing authority shall apply the same tax rate to all property within its jurisdiction."

■ In construing an Act, it is the duty of a court to save rather than destroy it, and to reconcile different provisions, giving them a consistent meaning rather than otherwise. Scales v. State, 181 Tenn. 440, 181 S.W.2d 621 (1944).

Consequently, this Court must conclude the convention did not exceed the limits of its authority either by sub-classifying tangible personal property or by empowering the legislature to sub-classify intangible personal property.

■ Appellants, however, insist if the "call of the convention can be construed to authorize the sub-classification of intangible personal property, by anyone, it requires that it be the convention," because the call does not authorize the convention to delegate such authority to the legislature. We disagree.

To support this insistence Counsel relies on the following provision of the call:

"The ratio of assessment to the value of property in each class or sub-class, as shall be established by the convention, * * *."

Under the call of the convention to alter and reform Article 2, Section 28, of the constitution, the convention was authorized and empowered "to require the classification of property into three classes for purposes of taxation, to-wit: Real property. Intangible personal property. Tangible personal property."

Limitations on the classification of real property were required and adhered to by the convention. No limitations on the classification of tangible and intangible personal property were required and the convention could have left this obligation to the discretion of the legislature.

In other words, the call gave the convention the discretion to classify tangible and intangible personal property into sub-classifications and to establish a ratio of assessment to value in each class or sub-class or to delegate that authority to the legislature.

The convention exercised that discretion by classifying tangible personal property into three sub-classifications and establishing a ratio of assessment to value in each class.

The convention likewise exercised that discretion by empowering the legislature to classify intangible personal property into sub-classifications and to establish a ratio of assessment to value in each class or sub-class.

It is evident the legislature by using the phrase, "as shall be established by the contention," envisioned the convention might classify personal property; and, therefore, in such an event, required the convention to establish a ratio of assessment to value of the property in each class or sub-class to meet such a contingency. The use of the word "as" is significant.

The convention was empowered to require the classification of tangible and in-

tangible personal property. The call did not make it mandatory on the convention to establish a ratio of assessment to the value of personalty in a class or sub-class unless, of course, the convention classified personal property.

While it is true the call does not specifically authorize the convention to delegate the authority to the legislature to sub-classify intangible personal property, it does so by implication.

"When a power is given by statute, everything necessary to make it effective is given by implication." State ex rel. Branch & Company v. Sinking Fund Commissioners, 1 Tenn.Cas. (Shannon) 490 (1875); Mayhew v. Mayhew, 52 Tenn.App. 459, 376 S.W.2d 324 (1963).

We are convinced the foregoing insistence of the appellants is without merit.

██ Appellants contend the convention exceeded the limitations of the call in providing for certain exemptions which authority to grant was expressly withheld by the terms of the call. The pertinent provision of the call provides:

"No exemptions other than those specified herein shall be authorized by the convention in the case of either tangible personal property or intangible personal property."

In the first paragraph of the proposed amendment, the convention placed the following exemption from taxation:

"In accordance with the following provision, all property, real, personal or mixed shall be subject to taxation, but the legislature may except such * * * as may be held and used for purposes purely religious, charitable, scientific, literary or educational * * *."

Appellants argue in so far as personal property is concerned the call did not authorize the convention to grant this exception; and that such an exception is in contravention of the general proviso forbidding exceptions unless specifically authorized by the call.

Article 2, Section 28, of the Constitution of Tennessee, in its preamended form provides in part:

"All property real, personal or mixed shall be taxed, but the Legislature may except * * * * such as may be held and used for purposes purely religious, charitable, scientific, literary or educational * * *."

The convention was called to alter and reform Article 2, Section 28, of our constitution. Thus, the convention did not authorize an exception for any personalty held and used for religious, charitable, scientific, literary or educational purposes; because such exemptions were authorized under Article 2, Section 28, of the constitution prior to this amendment.

As to appellants' second insistence nothing in the call expressly or impliedly prohibited the convention from adopting existing exemptions from the constitutional provisions which were not altered or reformed.

The convention simply lifted the quoted portion of the Article above from the Article and included it verbatim in the amendment.

██ With respect to the exemption of personal or family checking or savings accounts, the amendment provides:

"The legislature shall except * * * the entire amount of money deposited in an individual personal or family checking or savings accounts."

The call provides:

"The convention shall further provide that money deposited in an individual's personal or family checking or savings account shall be exempt from taxes, in an amount to be determined by the convention."

Appellants insist the phrase "in an amount to be determined by the convention" mandatorily requires the convention to establish a dollar amount for this exemption.

We find no merit in this contention.

The convention had authority to set the exemption at any amount it so chose. No monetary limit was placed on the convention by the call. An exemption of the entire amount in a checking or savings account was within the call.

All assignments of error are overruled and the decree of the Chancellor is affirmed. Appellants will pay the costs.

HUMPHREYS, McCANLESS and FONES, JJ., and WILSON, Special Justice, concur.