**Rev. Herman L. DRISKELL, et al.**

**v.**

**Honorable Edwin W. EDWARDS, Governor, State of Louisiana, et al.**

**Civ. A. No. 74–339.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Jan. 19, 1976.

Jerry L. Finley, Monroe, La., for plaintiffs.

William J. Guste, Atty. Gen. of Louisiana, Baton Rouge, La., A. Mills McCawley, Sp. Counsel, Robert G. Pugh, Sp. Asst. Atty. Gen. and Sp. Counsel, Shreveport, La., Camille F. Gravel, Jr., Sp. Asst. Atty. Gen. and Sp. Counsel, Alexandria, La., for defendants.

Before AINSWORTH, Circuit Judge, DAWKINS, Senior District Judge, and SCOTT, District Judge.

## OPINION

PER CURIAM.

Plaintiffs bring this suit challenging the constitutionality of Act 2 of 1972 of the Louisiana Legislature which provided for a Constitutional Convention to frame a new State Constitution. The Act called for the election of 105 delegates, one from each legislative district, and 27 delegates to be appointed by the Governor to represent specified groups of citizens.[1] Elections were held for the 105 elected delegates, the Governor appointed the remaining 27 delegates, and the Convention (commonly referred to as "CC–73") convened on January 5, 1973.[2] Proceedings were held at various intervals until January 19, 1974, when the proposed new Constitution was finally ready to be submitted to the voters for ratification. The ratification election was scheduled for April 20, 1974. On April 5, 1974, two weeks before the scheduled election, plaintiffs filed this suit seeking to declare null and void Act 2 of 1972 and to enjoin the April 20 election.

A single judge of the District Court for the Western District of Louisiana denied the request for convening of a Three-Judge Court, holding that the case did not present substantial constitutional issues. He then dismissed the case on the merits. Plaintiffs

---

1. Section 1 of Act 2 provides in part:

    "A. (1) . . . One delegate shall be appointed by the governor to represent each of the following: industry, labor, educational, civil service, wildlife and conservation, law enforcement, the judiciary, the professions, consumers, agriculture, youth and racial minorities. Fifteen additional delegates shall be appointed by the governor from the public at large."

2. During the course of the convention, four other delegates were appointed by the governor to replace four elected delegates who resigned. This is provided for in Section 3 of the Act.

applied to Justice Powell and then to Justice Douglas for an injunction to stop the April 20 election, which application was denied. The election was held as scheduled on April 20, 1974 and the voters of Louisiana ratified the proposed Constitution by a vote of 360,980 for to 262,676 against. Plaintiffs next appealed to the United States Supreme Court, which ordered the District Court's judgment vacated and a fresh decree entered from which a timely appeal could be taken to the Court of Appeals. Such fresh decree was entered by the District Court, and plaintiffs prosecuted an appeal to the Fifth Circuit Court of Appeals. On September 5, 1975 the Fifth Circuit vacated the District Court's judgment, remanded the case back to the District Court for further proceedings, and convened a Three-Judge Court to consider the case on the merits. The Fifth Circuit's decision did not reach the merits of the case, but held only that a Three-Judge Court was required since the issues were not "clearly insubstantial". *Driskell v. Edwards,* 518 F.2d 890 (5th Cir. 1975).

Plaintiffs' complaint asserts that by allowing the Governor to appoint 27 of the 132 delegates to the Convention, Act 2 violated the one-man, one-vote principle mandated by the Fourteenth Amendment to the United States Constitution. Plaintiffs take no issue with the manner in which the 105 elected delegates were elected. Their argument asserts that the presence of 27 appointed delegates, having equal voting strength in the Convention with the elected delegates, gives an unequal voice to the members of the various groups represented by the appointed delegates, thereby violating one-man, one-vote.

The issue thus framed requires the Court to direct its attention to two questions. In the first instance, we must decide whether a Constitutional Convention of the type called in Louisiana is a body whose members are required to be elected in accordance with the principle of one-man, one-vote. If this question is answered affirmatively, we must then decide whether the

procedure actually used to select delegates to CC–73 violates that principle.

Our search for an answer to the first question has not led us to any direct authority binding upon this Court. We have, however, been directed to a number of cases which provide persuasive guidance.

■ As a general rule, whenever a body of persons is to be elected by popular vote to carry out governmental functions, the election must be conducted according to the principles of the Fourteenth Amendment, including the principle of one-man, one-vote. *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Hadley v. Junior College District,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). A number of bodies have been held to be ones which perform governmental functions, and to which one-man, one-vote applied, e. g. Congress, in *Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); State Legislatures, in *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); and County Commissioners Court, in *Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

■ None of these cases define "governmental functions" in such a way as to clearly exempt a Constitutional Convention from the application of one-man, one-vote. Neither is it tenable to argue that a Constitutional Convention is not exercising a governmental function of the highest order, i. e. reform of the organic law of the State. The question resolves into a query whether the governmental function being exercised by the Convention is of a nature properly requiring formalized participation by all segments of the population through a fairly-apportioned body.

One common characteristic exists in all the cases requiring a public body to be elected under the one-man, one-vote principle; all the bodies whose makeup was under scrutiny exercised legislative functions. When bodies such as Congress, a State Legislature or a County Commission pass an Act, it ordinarily takes on the force of law without the necessity of approval by the people. This is true because, under our

theory of government, the people have delegated to the legislative bodies a certain portion of their sovereignty, the authority to draft, make and promulgate laws. A Constitutional Convention, on the other hand, exercises no sovereign authority. The people have delegated to the members of the Convention nothing more than the authority to propose changes in the organic law. No Act of the Convention takes on the force of law unless and until ratified by the people in a referendum election.

This crucial distinction between the function of a legislative body and a Constitutional Convention was certainly present in the instant case. Section 4 of Act 2 clearly defines and limits the authority of the Convention.

"The Convention shall have full authority to frame a new constitution for the state . . . which shall be submitted to the electors of the state for their approval or rejection . . .".

Section 9 of Act 2 provides for the submission of the proposed Constitution to the people for their adoption or rejection and further provides:

"C. The Constitution, *if ratified and adopted by the people* . . . shall become effective . . .". (Emphasis added).

Thus, it is clear that the delegates to CC–73 exercised no function other than to draft proposed changes to Louisiana's Constitution, which proposals would be submitted to the people for approval or rejection, and would become law only if ratified by the people.

As noted above, we find no direct authority on the question, but we do find several cases having persuasive authority. In *West v. Carr*, 370 S.W.2d 469 (Tenn.1963), *cert. denied* 378 U.S. 557, 84 S.Ct. 1908, 12 L.Ed.2d 1034, the Supreme Court of Tennessee considered a challenge to Tennessee's Constitutional Convention similar to the challenge in the instant case. In ruling that the Fourteenth Amendment did not require members of a Convention to be elected under the principle of one-man, one-vote, that Court noted:

"Thus, the Legislature has the final power *to make law.*

"A Constitutional Convention, however, has no power to take any final action, but can only propose constitutional changes for ratification or rejection by the people. This Act, as well as the convention it provides for, is merely part of the machinery of the amending process." (Emphasis original, 370 S.W.2d at 472).

The Pennsylvania Supreme Court also considered the issue in *Stander v. Kelley*, 433 Pa. 406, 250 A.2d 474 (Pa.1969), *cert. denied sub nom. Lindsay v. Kelley*, 395 U.S. 827, 89 S.Ct. 2130, 23 L.Ed.2d 738 (1970). That court answered the issue in the same manner as did the Tennessee Supreme Court:

"The function of the Constitutional Convention was to propose and *recommend* to the electorate of Pennsylvania changes and alterations in the State Constitution. The Convention had no lawmaking powers of any kind . . . The approval or disapproval of the Constitutional Convention's proposed amendments . . . was submitted to the electorate of Pennsylvania solely on a statewide basis, which is the purest form of 'one-man, one-vote'. If the convention which submitted the proposals did not represent all the voters of the State equally, this defect was clearly cured by the approval of the voters at the . . . statewide election." (Emphasis original). 433 Pa. 406, 250 A.2d at 481.

"Since the delegates to the Constitutional Convention had no power to bind the people, and since a majority of the electorate of Pennsylvania voted to adopt the (proposed amendment) the appellants cannot claim injury or Constitutional infirmity in the manner in which the delegates were chosen." 433 Pa. 406, 250 A.2d at 481.

In *Livingston v. Ogilvie*, 43 Ill.2d 9, 250 N.E.2d 138 (1969), the Illinois Supreme Court, citing *West v. Carr*, and *Lindsay v. Kelley*, decided a similar challenge to the Illinois Constitutional Convention in the same manner. The Court there held, as had

the Supreme Courts of Tennessee and Pennsylvania, that the one-man, one-vote principle was not applicable to a Constitutional Convention whose members only recommend changes in the Constitution to the people for ratification. In *Butterworth v. Dempsey,* 237 F.Supp. 302 (D.Conn.1964), the Three-Judge Court was concerned with problems of malapportionment of the Legislature which required constitutional changes and a Constitutional Convention to effect those changes. Thus, the holding there, concerned as it is with issues of legislative reapportionment not present in the instant case, is not apposite authority for our purposes.

On the basis of the foregoing, we find that the principles of one-man, one-vote had no application to the selection of delegates to the Louisiana Constitutional Convention of 1973. Thus, plaintiffs have no grounds for attacking Act 2 of 1972 on this basis. Because we so find, there is no need for us to consider the second part of this issue, i. e. whether the manner actually used in Louisiana to select delegates to CC–73 violated one-man, one-vote. Since plaintiffs' case is without merit, it is hereby ordered dismissed.

### ORDER

■ Plaintiff has filed a motion to recuse the three judges appointed to constitute this court. The motion makes the bare assertion that since all three judges are citizens of Louisiana, and thereby subject to the new Constitution, they will not be able to render fair and objective consideration to the issues in the case.

After the court was originally constituted, Chief Judge Edwin F. Hunter, Jr. of the Western District of Louisiana, recused himself since he was the judge who rendered the original opinion denying a three-judge court and dismissing the complaint. Thereafter, Judge Ben C. Dawkins, Jr. was appointed to take the place of Judge Hunter. We find that the reasons which led to Judge Hunter's recusal are not present in the case of the other three judges. Even though all three are Louisiana citizens, none

has heard argument or considered the case in anyway prior to the appointment to this particular three-judge court. None of the three has preconceived ideas as to the merits of the case. No reason exists why the three members of this court cannot give fair and objective consideration to the merits of the case. We therefore deny plaintiff's motion to recuse.