## The State of Louisiana v. Thomas Gutierrez.

The Legislature have the right, under the Constitution, to confer upon the Recorder's court in New Orleans, such criminal jurisdiction as may be necessary for the punishment of minor crimes and offences, and as the police and good order of the city may require.

The Article 103 of the Constitution, which guarantees to an accused the right of trial by jury, and requires that there should be an indictment or information, has no application to that class of offences which are to be tried summarily and without the intervention of an impartial jury from the vicinage.

Such cases as fall within the jurisdiction of the Recorder, Mayor or Aldermen, under Article 124 of the Constitution, form an exception to the general rule as laid down in Article 103, with regard to the right of trial by jury.

The Legislature is vested with absolute right of legislation, except when restricted by the Constitution.

The 3d section of the Act of the Legislature of 1859, entitled " an Act for the prevention and punishment of selling liquor to slaves," which requires that the Recorders in trying such offences, should be assisted by a jury of three slave-holders, is not unconstitutional.

A jury formed before the Recorder's court, under a special statute, does not fall under the constitutional clause in respect to an impartial trial by a jury of the vicinage, and any number of jurors may compose the jury that the Legislature may deem proper to fix.

APPEAL from the Recorder's Court of the First District of the city of New Orleans. *E. W. Moïse* and *C. Roselius,* for defendant and appellant.

VOORHIES, J. The defendant was tried, found guilty and sentenced, under the provisions of " an Act for the prevention and punishment of selling liquor to slaves, in the parish of Orleans," approved March 17, 1859. Session Acts, p. 168.

His defence is, that this statute is unconstitutional, because it denies the accused the right to be tried by an impartial jury of the vicinage, and dispenses with the filing of an indictment or information, in violation of the 103d Article of the State Constitution, requiring that : " Prosecutions shall be by indictment or information. The accused shall have a speedy public trial by an impartial jury of the vicinage." Const. 1852, Art. 103.

This case was tried before one of the Recorders of the city of New Orleans, assisted by a jury of three slave-holders, in conformity with the 3d section of the statute in question. This section reads as follows :

"That the Recorders of the city of New Orleans, and the Justices of the Peace in any part of the parish outside of the limits of said city, are hereby granted full power and authority to take cognizance of all prosecutions under this Act, and enforce the provisions of the same; that upon the arrest of any party or parties violating this Act, they, together with a jury of three slave-holders, summoned by them, shall pass a final verdict and enforce the penalties as aforesaid."

The two preceding sections define the offence, provide for the arrest of the accused, and lay down rules of evidence peculiar to this class of misdemeanors. The fourth and last section gives effect to the Act from and after the date of its passage.

The Legislature had the right to confer upon the Recorder's court, the criminal jurisdiction requisite to try the offence charged to the accused. This authority is derived from the organic law itself. The Constitution provides :

*Art.* 61. "The judiciary power shall be vested in a Supreme Court, in such inferior courts as the Legislature may from time to time order and establish, and in Justices of the Peace."

*Art.* 78, (after defining the civil jurisdictions of Justices of the Peace,) declares : "They shall have such criminal jurisdiction as shall be provided by law."

*Art.* 124. "The Mayors, Recorders, Aldermen and Assistant-Aldermen, shall be commissioned by the Governor as Justices of the Peace, and the Legislature may vest in them such criminal jurisdiction as may be necessary for the punishment of minor crimes and offences, and as the police and good order of said city may require."

The question then presents itself, whether the jurisdiction of the Recorder being conceded, the defendant was entitled to be prosecuted in that court, by indictment or information, and tried by a jury of the vicinage, within the terms of Article 103 of the organic law. It must be solved in the negative.

The Article 103, which lays down the general rule, and is, besides, merely declaratory of the common law on the subject, must yield to Article 124, which provides specially, by way of exception, for the trial of minor offences by the Recorders of the city of New Orleans, acting under authority conferred by the Legislature. Such misdemeanors, as relate to the police and good order of the city, could not possibly be disposed of, were it necessary to proceed with all the solemnities of a jury trial, in the ordinary way. Hence the adoption of Article 124 of the Constitution of 1852, a reënactment of Article 128 of the previous Constitution.

It is worthy of notice that heretofore, in the discharge of their functions as criminal courts, the Recorders have proceeded in the summary way, without the assistance of the prosecuting attorney, and that they have never been authorized to empannel and summon juries ;—a fact which certainly did not escape the attention of the conventions which framed the two last Constitutions. They must also have borne in mind that, in England, the *Magna Charta* provided expressly that no one should be tried, imprisoned and punished "*nisi per legale judicium parium suorum, vel per legem terræ ;*" and yet, that Justices of the Peace were authorized to try certain offenders summarily. Upon this subject Blackstone says : "By a

*summary* proceeding I mean principally such as is directed by several acts of Parliament, (for the common law is a stranger to it, unless in the case of contempts,) for the conviction of offenders, and the infliction of certain penalties created by those acts of Parliament. In these there is no intervention of a jury, but the party accused is acquitted or condemned by the suffrage of such person only, as the statute has appointed for his judge. An institution designed professedly for the greater ease of the subject, by doing him speedy justice, and by not harassing the freeholders with frequent and troublesome attendances to try every minute offence." IV Blackstone's Com., p. 279.

The object of conferring jurisdiction over minor offences to the Recorders and Justices of the Peace,—whose courts are of limited jurisdiction,—is that such cases may be disposed of summarily and with despatch. It is for this reason that their cognizance is transferred from courts, so constituted and organized as to admit of a regular trial by a jury of the vicinage, and of prosecution by indictment or information,—to other courts which have never been so constituted and organized.

The Legislature might have empowered the Recorders and Justices of the Peace to try the accused without the intervention of any jury; it is not conceived in what respect he has been injured, because the Recorder who tried this case deliberated and voted with the three slave-holders who sat as jurors. The Act certainly authorized him to do so; nor is there, apart from the 103d Article of the Constitution, any other provision in that instrument, limiting or curtailing the power of the Legislature to fix the number of jurors that will sit in any given case, or to declare what shall be their qualifications. *State* v. *Jones*, 8 R. 582; *State* v. *Mullen*, 14 An.

The Article 103, guaranteeing the right of trial by jury, is the general rule, to which the Article 124 forms an exception : the former proclaims a right ; the other recognizes a class of cases to which that right does not extend. In other words, the Art. 108 has no application whatever to that class of offences which are to be tried summarily, without the intervention of an impartial jury of the vicinage.

Is it true that the Article 124, under the sanction of which was passed the statute in question, contemplates that the Recorders, Mayors, Aldermen, and Assistant Aldermen shall try the cases within their jurisdiction by themselves, under pain of nullity? The Constitution nowhere says so. On the other hand, the Legislature is vested with absolute right of legislation, except when restricted by the organic law. There is such a restriction with regard to jury trials, as a general rule; but this restriction, as we have seen, does not hold when the offence or crime falls within the jurisdiction of Recorders; the Legislature, consequently, can organize the courts of these municipal Judges, for the summary disposition of their criminal business, on such a plan as meets its better judgment. In doing so, they may authorize these officers to act as well by themselves, as with the assistance of a jury, the formation of which is entirely left at the will of the lawgiver.

As the mode of trial before the Mayor and Recorders has none of the forms and solemnities of an ordinary trial by jury, and indeed, does not fall under the operation of the constitutional clause, with respect to an impartial trial by a jury of the vicinage, we deem it unnecessary to express any opinion on the question as to the number of jurors required to constitute that body, either at common law, or by the Constitution of this State. There is no necessity, therefore,

to determine whether, or not, it be sacramental to have twelve men in the Petit Jury. It has lately been decided, however, with regard to the Grand Jury, that, although the statute requires sixteen jurors to be drawn and sworn, yet, that this number is not sacramental. *State* v. *Delia Swift*, alias *Bridget Fury*, 14 An. 827.

It is, therefore, ordered, adjudged and decreed, that the judgment of the inferior Court be affirmed, with costs.

MERRICK, C. J., dissenting. I do not dissent from so much of the opinion of the majority of the court as holds that the Legislature may confer a limited criminal jurisdiction upon the Mayor, Recorders and Aldermen, for the punishment of minor crimes and offences. Whether the Legislature can confer the like power upon Justices of the Peace, relative to the punishment of white persons, is not necessary now to determine.

The 124th Article of the Constitution expressly declares, that the Legislature may vest in the Mayor, Recorders, Aldermen and Assistant Aldermen, such criminal jurisdiction as may be necessary *for the punishment of minor crimes and offences*, and as the police and good order of said city may require.

Here, the jurisdiction which may be conferred is not merely that of Justices of the Peace, that is, as conservators of the peace, but *it is the judicial power of pronouncing judgment on offenders guilty of minor crimes and offences.*

On this point there is no room to doubt. But here arises a question of some difficulty, viz, how are proceedings to be conducted before the Mayor, Recorders and Aldermen?

This can best be answered by recurring to the abuse or evil which this provision of the Constitution was intended to correct.

It is well known, that prior to the Constitutions of 1845 and 1852, the Recorders of this city were in the habit of exercising a summary jurisdiction over petty offenders, which became almost indispensable to the good government of the city. Yet their sentences and decrees were declared null and the prisoners discharged whenever a writ of *habeas corpus* was sued out from any higher tribunal.

The Article in question was, without doubt, inserted in the Constitution to enable the Legislature to invest the Mayor, Recorders and Aldermen with this summary power. And as they have never been attended in their jurisdictions with Grand Juries, Petit Juries and District Attorneys, it was doubtless the intention of the convention to vest the power of trial and judgment in them alone upon the first hearing of the cause, without the delay consequent upon more regular proceedings.

It does not, therefore, appear, as I think, that proceedings in these inferior jurisdictions were to be controlled by Art. 103 of the Constitution, which requires an indictment or information, and a trial by jury.

As it was in the power of the Legislature to confer jurisdiction upon the Mayor, Recorders and Aldermen, for the trial of the offence denounced in the Act of 17th of March, 1859, the question then arises, was it unconstitutional to aid them in their deliberations by the assistance of three so called jurymen or additional judges?

The statute provides, that upon the arrest of any party or parties violating the Act, *they* (the Recorders) *together with a jury of three slave-holders* summoned by them, *shall pass a final verdict* and enforce the penalties aforesaid.

No doubt, the Legislature would have power to cause a jury of twelve persons to be summoned before the Recorders for the trial of minor offences; for this

would be in accordance with the common law and the general provisions of Article 103 of the Constitution.

But could the Legislature confer the power upon a so called jury to be composed of the Recorders and three slave-holders, to try the offence, instead of the Recorder alone or a regular jury of the vicinage ?

If such trial could be supposed to exert a more unfavorable influence upon the fate of the accused than a trial before the Recorder alone, then the law should be declared unconstitutional. For the Constitution has only authorized the Legislature to adopt two modes for the trial of minor offences, viz, by the Recorder, Mayor, Aldermen and Assistant Aldermen, or in the usual manner, to-wit, by "an impartial jury of the vicinage." The term "jury of the vicinage" is one well known to the common law, and when used in the Constitution, must be held to mean a body composed of twelve impartial men of the vicinage. See Story on the Constitution, sec. 923 ; 3 Peters, 446 ; 11 How. 437.

For the trial by jury has been considered of common right, and one of the most sacred safeguards against oppression under the common law. It has always consisted of twelve men, and a verdict of a less number has ever been regarded in the criminal law as of no validity.

Now, if the Legislature has the power to modify this institution, by reducing it from twelve to three men, it may reduce it to one, and make that one the perpetual trier of all issues of fact. In other words, make him the sole judge of the facts. Any attempt, therefore, to reduce the number of jurors in the jury trial, should be viewed by the courts as an attack upon the constitutional rights of the citizen, and should be declared of no effect. 3 Peters, 446.

The three slave-holders, under the Act of 1859, are not therefore a jury as contemplated by the 103d Article of the Constitution.

Neither can their agency in the trial of the case be regarded as favorable to the accused. They are selected from among slave-holders, in order that they may be more vigilant and firm in punishing the offence of selling liquor to slaves. Their feelings may justly be supposed to be aroused, if their prejudices are not excited on the questions they have to decide. Hence, their agency in the trial cannot be considered as particularly favorable to the accused ; but on the contrary, it may exert an unfavorable influence upon the mind of the Recorder. The defendant may, therefore, justly complain of the mode of trial, and insist that he shall be tried by the Recorder alone, or if by a jury, that the same shall be an impartial jury of the vicinage, which shall consist of the number known to the common law and the framers of the Constitution.

It is supposed that, inasmuch as Article 124 of the Constitution is exceptional to Article 103, that therefore the Legislature may adopt any form of jury for the trial of minor offences it shall see fit.

I have just shown, and it is so admitted, that the framers of the Constitution did not contemplate that the Recorders &c. were to be attended by juries at all.

Then, when it conferred jurisdiction on them, it was not intended that it should be shared by others. The court formed of a Recorder and three slave-holders is not the same thing as a court composed of the Recorder alone. Now, it is conceded, that Art. 124 confers upon the Recorders the power to try issues of *law* and *fact* in a summary manner. If the Legislature can authorize other persons to assist the Recorders to try issues of fact, why may they not be retained to try issues of law ? There is no difference. If because the Constitution has not ex-

*pressly* prohibited such assistance in the case of Recorders, why might not this court be assisted in the same way in the trial of issues of fact and law? It is not *expressly* prohibited by the Constitution, but every one must see that it is forbidden by necessary intendment. This kind of auxiliary jurisdiction was at-tempted by the Legislature in reference to the District Court in an Act entitled " An Act to provide for the trial of recused cases out of the city of New Orleans."

In the case of the *State* v. *The Judge of the Sixth Judicial District*, this court said : " The Article 81 declares that the Judges of the several inferior courts shall be elected by the qualified voters of their respective districts or parishes." (In the case of Recorders, add, it is by the " citizens of the city of New Or-leans.") The court proceeds, " Power, therefore is granted to the Legislature to establish inferior courts; but the power to choose the Judges thereof, when established, is vested elsewhere—namely. in the qualified voters of the particular district or parish."

" The Constitution having thus provided in terms not of permission, *but of command*, how Judges of inferior courts shall be chosen, it follows that the Legis-lature had no power to prescribe any other mode. 9 An., p. 62. See also the case of the *State* v. *The Judge of the Twelfth District*, 9 An., p. 64.

In regard to the Article 103 of the Constitution, which declares that the jury in criminal cases shall be an *impartial* jury of the vicinage, I think this court would have power, notwithstanding the dictum in 8 Rob. 582, to declare a law unconstitutional where it clearly violated this right of the citizen ; for example, a law which declared that a jury to try the accused should be composed of the relatives of the injured party, or of persons who had suffered like injuries them-selves, and in all cases where jurors are selected because they may be supposed to have prejudices against the accused.

Such persons cannot be deemed *impartial jurors.* If not, this court is required to pronounce null any law declaring such jurors competent.

Looking to this view of the Constitution, it may also be seriously questioned whether slave-holders, on whom the injury of drunkenness in their slaves princi-pally falls, are as a class without prejudice against those who are suspected of selling liquor to slaves.

However this may be, I think the Act unconstitutional, because the law nei-ther entrusts the decision of the cause to the Recorder alone, nor provides him with an impartial jury of the vicinage as known to the common law and our present and previous Constitutions.

---

## Same Case—On a Re-hearing.

VOORHIES, J. The defendant's counsel seem to have so far misunderstood the opinion of the court, as to state, in their brief on a re-hearing, " that no other reason is assigned by the court for the conclusion to which it came, unless, indeed, it be one founded upon the inconvenience of trying cases before Recorders with juries."

A simple inspection of the two opinions delivered in this case, will convince any one that this inconvenience was considered by the court merely as one of the reasons which prompted the Convention in the adoption of Article 124 of the Constitution.

STATE
v.
GUTIERREZ.

The right of the Recorders to try cases summarily, does not, we think, arise *ex necessitate rei,* but is derived under the provisions of the organic law.

In the case of the *City of New Orleans* v. *Eliza Costello,* the court had said : " The third section of the ordinance authorizing a prosecution before the Recorder, does not violate Article one hundred and three of the Constitution, which requires prosecutions to be by information or indictment, because the same Constitution expressly authorizes the Legislature to vest in the city Recorders such criminal jurisdiction as may be necessary for the punishment of minor offences and crimes, and as the police and good order of the city may require. Constitution, 124." 14 An. 37.

On that occasion the Articles 103 and 124 of the organic law had been considered, with reference to each other ; and the result of the inquiry was that some causes might be tried summarily before the Recorders of New Orleans. In the case under consideration, we went more lengthily in the investigation of the constitutional question, raised by the appellant ; and considered, as we now consider, that we had given, for our conclusions, reasons derived from the organic law itself, and not, as stated by counsel, from the inconvenience to which a contrary decision would lead.

It was stated in our former opinion, that the Recorders, previous to the year 1845, had exercised summary criminal jurisdiction. " Now," says the defendant's counsel, " we have no hesitation in saying, with entire respect to the court, that the supposed fact upon which the reasoning of the court rests, is no fact at all. One of the undersigned was Attorney General of the State for some years, and, up to February, 1853, and during his term of service, certainly no such cases occurred ; and he never, before 1845, ever heard of any such cases as those referred to by the Chief Justice and the court. We make this statement with every means of knowing what has occurred in New Orleans in relation to this matter, and are quite sure that no member of the bar of this city will dispute the correctness of what we say."

This contradiction of a statement made in the decision of the cause, naturally drew our attention. Pains were taken to ascertain how the matter stood ; and the following document will, it is hoped, set it at rest :

" STATE OF LOUISIANA, PARISH OF ORLEANS.

" I, the undersigned authority, do hereby certify that from an inspection of the books of my office, as early as the year eighteen hundred and thirty-eight, it appears that the Recorder of this district of the city of New Orleans, has habitually exercised summary criminal jurisdiction by the infliction of fines and imprisonment, in a variety of cases, including even the offence of selling liquors to slaves ; and that the entries on the books of the office during that period, show this fact.

" Given under my hand, this 9th day of April, A. D. 1860.

" J. CLUZART, Assistant Clerk.

But it is objected, that when Article 124 of the Constitution came up in the Convention, an amendment offered, with the view of dispensing with the trial by jury, was voted down.

We are referred to the following extract from the journal :

" *Mr. Collins* then moved to insert at the end of the Article, the following words : *and in case of misdemeanors, the trial by jury may be dispensed with, provided the accused consents.* . . . . . .

" The question being then on the amendment offered by *Mr. Collins*, the President put the motion on its adoption, which was lost.

" On motion, the Article was adopted without amendment."

Two things will be noticed with respect to this amendment. In the first place, the object of the Article was to enable the municipal Judges to try summarily those minor offences, which relate to the police and good government of the city ; whilst the amendment had in view misdemeanors in general. And, in the second place, the amendment would have defeated the summary trial, by leaving this matter at the option of the accused. Hence the rejection of the amendment.

It is an error to suppose that, under this view of the question, the Legislature might authorize the city Recorders to try felonies in a summary manner. A felony is not a minor offence—and still less a minor offence, relating to the police of the city. The 124th Article of the Constitution refers to a particular class of misdemeanors, among which must be enumerated the traffic of spirituous and intoxicating liquors with slaves, as affecting the police and good government of the city.

The last objection to be met is, that the Article of the State Constitution as interpreted by this court, is in conflict with the ordinance of Congress admitting Louisiana in the Union.

Congress did require of the Territory of Orleans, a Constitution guaranteeing the right of trial by jury in all criminal cases. But it is a novel doctrine, that a mere Act of Congress can bind a sovereign State of this Union for all time to come, with regard to the administration of her criminal justice.

It is, therefore, ordered, that our former opinion, in this cause, be affirmed.

MERRICK, C. J., I adhere to my former opinion.