294 So.2d 532 (1974)
Eddie W. BATES et al.
v.
Honorable Edwin W. EDWARDS, Governor, State of Louisiana, et al.
No. 54601.
Supreme Court of Louisiana.
April 3, 1974.
Supplemental Opinion April 5, 1974.
*533 William J. Guste, Jr., Atty. Gen., Kenneth C. Dejean, Asst. Atty. Gen., Camille F. Gravel, Jr., Robert G. Pugh, Special Asst. Attys. Gen., for defendants-relators.
Richard C. Cadwallader, Baton Rouge, for plaintiffs-respondents.
Jerry L. Finley, Monroe, for Aubrey S. Phillips, amicus curiae.
DIXON, Justice.
On March 22, 1974 plaintiffs brought an action to enjoin the April 20, 1974 election on the proposed new constitution for the State of Louisiana, and to have declared null and void Act 2 of 1972, which provided for the Constitutional Convention which was held, beginning in 1973.
When issue was joined in the district court, defendants applied to this court for a final determination of the case. Under the authority of Article 7, § 10, Louisiana Constitution of 1921 we granted writs and ordered the record up. See Seegers v. Parker, 256 La. 1039, 241 So.2d 213 (1970). Because an election is pending and because of the importance to the State as a whole, this memorandum opinion and decree is issued, to be followed by an expanded opinion containing written reasons and discussions of applicable authorities.
Plaintiffs attack the validity of the proceedings leading to the formation of a new constitution which is scheduled for submission to a vote of the people for two principal reasons:
1. Plaintiffs contend that the legislative determination to call a constitutional convention must be submitted to the people and ratified by them before a new constitution can be legally adopted;
2. Plaintiffs contend that the existence of twenty-seven appointed delegates out of a total of one hundred thirty-two violates (a) the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States (the "one man, one vote" rule) and (b) the act of Congress of February 20, 1811, c. 21, 2 U.S.Stat. 641 (the Enabling Act providing for the formation of a state government, following which Louisiana was admitted to the union).
We find no merit in the arguments of plaintiffs. There is no requirement in Louisiana that the legislative call for a constitutional convention must be submitted to the people for ratification, where the final product of the constitutional convention itself, the proposed new constitution, must be submitted to the people and approved by them before it becomes a part of the law. Nor is there a uniform body of *534 law in other jurisdictions enforcing a requirement that the convention call be ratified by the people.
Plaintiffs argue that the Enabling Act requires that all constitutional convention delegates be elected. The Enabling Act made provisions for the formation of the first constitution of the State of Louisiana. It did not pretend to provide for all future constitutions or their amendments or changes. The Enabling Act required that the product of the constitutional convention be submitted to Congress for approval, after which, under the provisions of the act of Congress of April 8, 1812, c. 50, 2 U.S.Stat. 701, the State of Louisiana was admitted to the union "on an equal footing with the original states ..." The United States Supreme Court decided in Permoli v. Municipality No. 1 of the City of New Orleans, 3 How. (44 U.S.) 589, 11 L.Ed. 739 (1845) that the constitution of the State of Louisiana, when formed pursuant to the Enabling Act and accepted by Congress, superseded the Enabling Act. Spooner v. McConnefl, 1 McLean's C.C.Rep. 337 (1838) is not applicable.
The one man one vote rule (Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963)) is not applicable to a constitutional convention, which neither legislates nor governs. Pender v. Gray, 149 La. 184, 88 So. 786 (1921); State ex rel. Hoffman v. Judge, 149 La. 363, 89 So. 215 (1921). The constitutional convention under these circumstances is not the type of legislative or executive creature whose members must be elected under the one man one vote rule. Livingston v. Ogilvie, 43 Ill.2d 9, 250 N.E.2d 138 (1969); West v. Carr, 212 Tenn. 367, 370 S.W.2d 469 (1963); see Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967).
For these reasons, the demands of the plaintiffs are rejected, at their cost.

SUPPLEMENTAL OPINION
The issues were stated in the memorandum opinion and decree rendered April 3, 1974.
Validity of the Convention Call
Act 2 of 1972 provided for a constitutional convention to meet on January 5, 1973 to frame a new constitution for Louisiana. One hundred five of the one hundred thirty-two delegates were to be elected, and twenty-seven appointed by the Governor. The finished draft was to be submitted to the electorate for their adoption or rejection. There was no requirement in Act 2 of 1972 that the convention call be submitted to the electorate for approval; nor is there any provision in the Louisiana Constitution of 1921 concerning the method of adopting a new constitution.
The only provisions in the Louisiana Constitution of 1921 for changing the constitution relate to constitutional amendments.
Even if the amending procedure contained in the Louisiana Constitution of 1921 in Article 21, § 1 could be said to restrict the methods available for the formation of a new constitution, the procedure there described and as interpreted by this court could not be employed, for Section C of that Article 21 provides that, "When more than one amendment is submitted to the same election, each of them shall be so submitted as to enable the electors to vote on each amendment separately ..." The interpretation placed on this constitutional provision in Graham v. Jones, 198 La. 507, 3 So.2d 761 (1941) would cast grave doubt upon an attempt to form a new constitution except as an article-by-article revision scheme.
At any rate, this court early decided in State v. Favre, 51 La.Ann. 434, 25 So. 93 (1898) that a new constitution regularly framed by a constitutional convention and adopted differs from a constitutional amendment. See 17 La.L.Rev. 123.
*535 Plaintiffs argue that since the Louisiana Constitution of 1921 does not provide for the calling of a constitutional convention, the power to call such a convention "is vested in the sovereign people of Louisiana," and such a convention cannot meet unless first approved by the voters. As authority for this proposition, plaintiffs cite Article 1, Sections 1 and 15 of the present constitution. These sections provide:
"Section 1. All government, of right, originates with the people, is founded on their will alone, and is instituted solely for the good of the whole. Its only legitimate end is to secure justice to all, preserve peace and promote the interest and happiness of the people."
"Section 15. This enumeration of rights shall not be construed to deny or impair other rights of the people not herein expressed."
These sections of the Bill of Rights article of our present constitution provide guiding principles upon which our legal system is founded. They do not, however, abrogate other specific provisions of our constitution.
Article 3, Section 1 of the present constitution provides:
"The legislative power of the State shall be vested in a Legislature, which shall consist of a Senate and a House of Representatives."
The "legislative power" referred to in this article has been interpreted as empowering the legislature to enact any laws it sees fit, limited only by the positive provisions of the state and federal constitutions. Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547 (1941); Ward v. Leche, 189 La. 113, 179 So. 52 (1938); State v. Toon, 172 La. 631, 135 So. 7 (1931). The legislature has all powers of legislation not specifically denied it by the constitution. Russell v. McKeithen, 257 La. 225, 242 So. 2d 229 (1970); Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49 (1942); State v. Cusimano, 187 La. 269, 174 So. 352 (1937); State ex rel. Porterie v. Charity Hospital of Louisiana, 182 La. 268, 161 So. 606 (1935); Ascension Red Cypress Co. v. New River Drainage District, 175 La. 300, 143 So. 270 (1932); Walker v. Superior Brass & Copper Foundry Co., 152 La. 626, 94 So. 139 (1922); Mulhaupt v. City of Shreveport, 126 La. 780, 52 So. 1023 (1910); State v. Gutierrez, 28 La. 158, 15 La.Ann. 190 (1860); Bozant v. Campbell, 19 La. 222, 9 Rob. 411 (1845); LeBreton v. Morgan, 4 La. 48, 4 Mart. (N.S.) 138 (1826).
The right of the legislature to call a constitutional convention is recognized both in our Louisiana jurisprudence and in the authoritative treatises dealing with the subject of constitutional conventions. State v. American Sugar Refining Co., 137 La. 407, 68 So. 742 (1915); Jameson, The Constitutional Convention (Third Ed. 1873), 209; Cooley's Constitutional Limitations (Eighth Ed. 1927), 85.
One case is cited to us by plaintiffs in which a state supreme court declared unconstitutional a convention call by a state legislature which was not ratified by the electorate. In Bennett v. Jackson, 186 Ind. 533, 116 N.E. 921 (1917), the Supreme Court of Indiana held that the General Assembly of that state did not have the authority to call a constitutional convention without submitting the matter to the voters of that state. That opinion noted that the 1917 convention call had been preceded by a convention call which was submitted to the electorate in 1914 and by them soundly defeated.
The Indiana court also noted that its "Legislature has no inherent rights. Its powers are derived from the Constitution...," and that when the legislative powers are not found in the constitution, then "a warrant for the same must be found somewhere." Therefore, the court found that the constitutional call should have been submitted to the people. (116 N.E. 922, 923).
*536 These reasons are not applicable to the State of Louisiana. The fact that a call for a constitutional convention was defeated in Louisiana in 1956 cannot be said to prevent any attempt to form a new constitution in Louisiana without obtaining the prior approval of the electorate. This court has previously refused to draw broad inferences from an election in which the voters decided against holding a new constitutional convention. Foley v. Democratic Parish Committee, 138 La. 220, 70 So. 104 (1915).
Defendants cite another state supreme court decision which has ruled on the regularity of a constitutional convention call not submitted by the legislature to the electorateIn Re Opinion to the Governor, 55 R.I. 56, 178 A. 433 (1935). The court there was asked if it would be a valid exercise of the legislative power to provide for a constitutional convention to form a new constitution which would be submitted for ratification to the electorate. The court first found that the state was not restricted in the formation of a new constitution by the provisions in the existing constitution concerning the adoption of amendments to that constitution and that the Rhode Island constitution was silent concerning the procedure for adopting a new constitution. The Rhode Island court held that its General Assembly, not being prohibited by the existing constitution, did have the power to provide for a new constitutional convention. The Rhode Island court discussed the Indiana opinion in Bennett v. Jackson, supra, and disapproved the conclusion of the Indiana court, pointing out that the procedure required by the Indiana court involved four popular elections before a new constitution could be adopted. First, the legislature which makes the convention call is elected; second, the electorate approves the convention call; third, delegates are elected; and fourth, the proposed constitution is submitted to the electorate. The Rhode Island court considered that the first, third and fourth of these elections are necessary for legally altering the constitution by the convention method, but that the requirement of a popular vote to ratify the convention call by the legislature impedes rather than facilitates the exercise by the people of their power to control governmental institutions. The Rhode Island court noted that it might be "wiser" to impede the exercise of popular power, but that decision was a matter of policy to be decided by the legislature and not essential to the validity of a call for a constitutional convention. 178 A. 455.
State v. American Sugar Refining Co., supra, does not support the position of plaintiffs. Two attacks on the Constitution of 1913 were there made. One was that the convention call submitted by the legislature to the people was invalid and the other that the particular constitutional section involved in the litigation exceeded the authority granted the constitutional convention by the legislature.
The first contention was based on the fact that the call was issued by a special session of the legislature, which had been called into session to consider a constitutional convention for the limited purpose of providing for the bonded debt of the State; the power of special sessions of the legislature was limited in the Constitution of 1898, in effect at that time, "to objects specially enumerated in this proclamation convening such extraordinary session." The Supreme Court held that the call of a constitutional convention was not "legislative action" which could be restricted by the Governor's proclamation, and that it was within the power of the legislature to issue a constitutional call broader than that specified in the Governor's proclamation convening the extra session of the legislature.
But as to the second argumentthat the constitutional convention exceeded the power prescribed in the convention call the court ruled otherwise. The conclusion was that the constitutional convention could do no more than it was authorized to do in the convention call by the legislature, *537 which had been submitted to the people and by them approved.
One previous constitution of the State of Lousiana was adopted by a legislative convention call which was not ratified by the voters. However, the completed document was submitted to the voters and ratified in 1879. On only two occasions were both the constitutional call and the completed proposed constitution submitted to the electors for approvalin 1845 and 1852. The last three Louisiana constitutionsthose of 1898, 1913 and 1921were formed by a convention called by legislative action approved by the voters, but the completed document was not subject to submission for popular approval. 9 Tul.L.Rev. 245 (1934-1935); 1 Projet of a Constitution for the State of Louisiana with Notes and Studies, Part 1, 279 (1954).
The various practices that have been employed by states of the union and by nations which have used "amending conventions," which might result in a new constitution, are listed in a note at 6 Tul.L.Rev. 75, 76. Twelve methods are listed in addition to various combinations.
Plaintiffs in this case labor under a great burden. In the absence of a finding that the method employed for forming a new constitution is violative of due process of law, doubt concerning the validity of the procedure adopted should be resolved in favor of validity. See Lobrano v. Police Jury, 150 La. 14, 90 So. 423 (1921).
Plaintiffs' contentions find little support in the traditional treatises on state constitutions. The power to call a constitutional convention is recognized as an exclusive perogative of the legislative branch of government. Cooley's Constitutional Limitations, supra; Jameson, The Constitutional Convention, supra, § 121-124. Judge Jameson clearly recognized that two methods of calling a constitutional convention are possible. "There may, then, be two cases: first, when the legislature itself passes upon the question of calling a Convention, without the intervention of the electoral body; and, secondly, where the legislature first recommends a call, then refers the question to a vote of the electors, and, finally, on an affirmative vote by the latter, issues the call." Jameson, supra, § 123.
Consequently, we find no merit in plaintiffs' argument that the legislative determination to call a constitutional convention must be submitted to the people and ratified by them before a new constitution can be legally adopted.
One Man One Vote
Plaintiffs complain that the provision of Act 2 of 1972, which permitted the Governor of Louisiana to appoint fifteen delegates to the constitutional convention to represent the public at large and twelve delegates to represent certain defined classes of Louisiana citizens, violates the Fourteenth Amendment to the United States Constitution. It is alleged that these appointed delegates "dilute" the vote of the citizens in violation of the "one man one vote" doctrine.
The highest courts in two states have ruled on this particular question, adverse to the contentions of plaintiffs.
In West v. Carr, 212 Tenn. 367, 370 S. W.2d 469 (1963), cert. den. 378 U.S. 557, 84 S.Ct. 1908, 12 L.Ed.2d 1034 (1964), the issue was raised whether the apportionment of delegates to the constitutional convention, being upon the same basis as that held unconstitutional in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), was likewise unconstitutional. The court held it was not, noting the fundamental difference between a legislative body and a constitutional convention:
"This conclusion is reinforced when it is considered that neither the delegates nor the convention can take any final action, but are strictly limited to the subjects specified in the call, and as to them, can only make proposals which can have no effect unless and until they are ratified *538 in another election by a vote of the people of the State at large, where every qualified voter will be entitled to vote and every vote given the same weight." West v. Carr, 370 S.W.2d 469, 474.
Likewise, in Livingston v. Ogilvie, 43 Ill.2d 9, 250 N.E.2d 138 (1969), the Supreme Court of Illinois stated:
"We are of the opinion that the one-man, one-vote principle is not applicable to the election of members to a constitutional convention where the only authority of the members is to propose amendments to be submitted to a vote of the people of the State at large." 250 N.E. 2d 138, 146.
Every elected office is not governed by the one man one vote doctrine. Elected judicial officers, for example, are exempt from the provision. Wells v. Edwards, 347 F.Supp. 453 (M.D.La.1972), affirmed 409 U.S. 1095, 93 S.Ct. 904, 34 L. Ed.2d 679 (1973). In Wells, the court noted the types of governmental activities to which the one man one vote requirement has been applied. These included, "making laws, levying and collecting taxes, issuing bonds, hiring and firing personnel, making contracts, collecting fees, operating schools, and generally managing and governing people."
These functions are easily distinguished from those of the constitutional convention called by Act 2 of 1972. That convention was merely charged with confecting and presenting the electorate for approval a draft constitution. It had no power to enact provisions of law having a binding effect. This is one of the recognized features which distinguishes this type of constitutional convention from other governmental activities. As noted in Jameson: "It never supplants the existing organization. It never governs." Jameson, supra, § 11, 10.
When constitutional conventions have presumed to usurp the function of the legislative branch of state government, this court has stricken such purported actions with nullity. Pender v. Gray, 149 La. 184, 88 So. 786 (1921); State ex rel. Hoffman v. Judge, 149 La. 363, 89 So. 215 (1921). Considering the limited function of the constitutional convention, it is not violative of the one man one vote doctrine to provide for both elected and appointed delegates to the convention.
In addition, it should be noted that the United States Supreme Court has indicated that it is not per se violative of the one man one vote doctrine to have a combination of elective and appointive officials at the state level. Sailors v. Board of Education of Kent County, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). In the present case, there is no contention made by plaintiffs that the elected delegates were not chosen from districts apportioned in accordance with the one man one vote guidelines of the United States Supreme Court. The existence of the appointed delegates did not "dilute" the power of the vote of any given citizen of the State.
Enabling Act
Plaintiffs' final argument is that the "Enabling Act," the Act of Congress Feb. 20, 1811, c. 21, 2 U.S.Stat. 641, 3 West's Louisiana Constitution 506, in some way fixed the manner for the formation of all future constitutions of the State of Louisiana and is still binding on the legislature and on the people of the State. The argument is made that the act requires that all delegates to the constitutional convention be elected.
There is no substance to this argument. The Enabling Act contained provisions, some of which were contemplated to be of a permanent nature, and some of which merely provided the mechanics for forming a new state government for the Territory of Orleans. The Enabling Act does not, by its language, pretend to establish for all time the manner in which this new state should govern itself. Congress, in this act, provided for the suffrage at the election of delegates, fixed the date of that election, *539 fixed the date for the first meeting of the convention, which was instructed to determine whether it would form a constitution and a state government. If the convention decided to form a constitution, it was then to be submitted to Congress, whose approval was essential prior to admission.
The act of admission of Louisiana to the union admitted the state "on an equal footing with the original states," approved the constitution formed pursuant to the Enabling Act and made certain other conditions not here relevant.
Plaintiffs argue that Spooner v. McConnell, 1 McLean's C.C.Rep. 337, an 1838 United States Supreme Court case, had the result of continuing the requirements of the Enabling Act as a part of the "organic law" of this State. Spooner had to do with provisions of the Northwest Ordinance of 1787. The argument was made in that case that the Northwest Ordinance of 1787, an ordinance of the Continental Congress (see Schwartz, The Bill of Rights, A Documentary History, Vol. 1, 385 (1971), was continued in full force and effect over the Northwest Territory. Plaintiffs misinterpret Spooner v. McConnell. The case was decided "upon principles wholly unconnected with, and irrespective of, the ordinance of '87." 1 McLean's C.C.Rep. 337, 379.
Furthermore, in Permoli v. Municipality No. 1 of the City of New Orleans, 3 How. (44 U.S.) 589, 11 L.Ed. 739 (1845), the United States Supreme Court reviewed the Enabling Act of February 20, 1811. The court held that the laws of Congress, including the Enabling Act, were all superseded by the State constitution when it was approved by Congress. In referring to the Northwest Ordinance of 1787, the first Bill of Rights enacted by the federal government, the court noted that this legislation was superseded in Louisiana by the adoption of the State constitution and its approval by the act of admission.
There is no merit to these contentions.
For these reasons, the demands of the plaintiffs are rejected at their cost.

APPENDIX
Procedures Followed in Adopting Prior Louisiana Constitutions
Constitution of 1812
In the act of March 2, 1805, 2 U.S.Stat. 322, Congress provided that the Territory of Orleans shall be authorized to form a constitution and government when the free population reached 60,000.
The act of February 20, 1811, 2 U.S. Stat. 641, authorized the holding of an election in the territory to select delegates to form a convention. After their election the delegates were to determine by majority vote if it was necessary and expedient to form a constitution and state government. If the vote was favorable to formation a constitution was to be written so as not to contravene certain terms contained in section 3 of the act and was to be submitted to Congress for approval.
The act of April 8, 1812, 2 U.S.Stat. 701, approved the constitution submitted by the constitutional convention. The act sets forth certain conditions under which Louisiana was admitted into the union and states that the conditions set forth in section 3 of the act of 1811 are fundamental.
The following observations regarding the adoption of our first constitution are of interest, if not relevance:
1. The proposal that a constitutional convention be held was not submitted for a popular vote. The election held was only for the purpose of selecting representatives.
2. The representatives decided whether a constitution was to be written, not the populace.
3. The completed document was approved by a majority of the delegates and Congress, not the people.
*540 Article VII of the Constitution of 1812, titled Mode of Revision, provided that any change or amendment must be made in the following manner:
1. Proposal for change must have been approved by a majority of the legislature.
2. The question of holding a convention to effect the change was to be submitted to the people.
3. If a majority of the total number of qualified voters approved, the question was resubmitted to the people the following year.
4. Approval the second time by a majority of all qualified voters prompted the election of delegates to a constitutional convention.
Constitution of 1845
The constitutional convention was approved by the people pursuant to the procedure above, act 5 of 1841, and was called by act 64 of 1844. The completed document was submitted to the people for approval. Tucker, Source Books of Louisiana Law, Part IV, 9 Tul.L.Rev. 244 (1935); Powell, A History of Louisiana Constitutions, Projet of a Constitution for the State of Louisiana, Louisiana Law Institute (1954).
Constitution of 1852
The question of whether to hold a constitutional convention was submitted to the people. Act 73 of 1852. Delegates were elected, and the completed document was submitted for approval by the voters. See Tucker, supra.
Constitution of 1861
This constitution, affecting only minor changes necessitated by secession, was framed by the convention called by the legislature and was not submitted for approval by the people. Tucker, supra; Powell, supra.
Constitution of 1864
The convention was called by proclamation of General Banks and upon completion was ratified by popular vote. According to the authorities, this constitution was not recognized by Congress. Tucker, supra; Powell, supra.
Constitution of 1868
Under authority of the Reconstruction Acts, General Sheridan had the proposal for holding the convention submitted to a popular vote, and the document was submitted for popular approval after its completion. Tucker, supra.
Constitution of 1879
The convention was called by legislative initiative in act 3 of 1879. After completion of the document it was submitted to the voters for approval. Tucker, supra; Powell, supra.
Constitution of 1898
By act 52 of 1896 the proposal to hold a constitutional convention was submitted to the voters; however, section 3 of the act stipulated that the document prepared by the delegates would be final and not subject to popular approval.
Constitution of 1913
Pursuant to act 1 of the Extra Session of 1913 a proposal to hold a constitutional convention was submitted to the people. Section 3 of the act stipulated that the completed document was not subject to popular approval.
Constitution of 1921
By act 180 of 1920 the legislature submitted a proposal to hold a constitutional convention to the people. The completed document was not subject to submission for popular approval, and the constitution *541 as adopted by the convention went into effect without being put to a popular vote.
Summary
Disregarding the Civil War and Reconstruction constitutions, the practices are:
1. In five our of seven instances the question of whether to hold a convention was submitted to a popular vote. In 1812 Congress provided for the election of delegates and the completed document was not submitted to the people. Only the Constitution of 1879 was formed by convention called by the legislature, composed of elected delegates, with popular ratification of the new constitution.
2. In four out of seven instances the question of the constitution was submitted only once, three times on the question of holding a convention and once for ratification of the completed document. In two instances, popular approval was sought for both the convention and the document. The 1812 document was never directly submitted for popular approval.
Procedure for Adoption of United States Constitution
In February, 1787 a resolution was adopted by the Congress that recommended a convention be held in Philadelphia the following May. It was proposed that delegates from the various states be assembled for the purpose of revising the Articles of Confederation and reporting to Congress and the several legislatures any alterations in the existing provisions that might be necessary. The Articles of Confederation had provided for a government without power to tax, to raise troops, to regulate commerce, or to execute or enforce its own laws or treaties. The resolution was in strict compliance with the amendment procedures contained in the articles and was acted upon by all of the states except Rhode Island. After the convention met it decided that amendments to the articles would not cure the existing defects and recommended a new constitution that could be ratified by the conventions of nine states. Article VII of the United States Constitution contains such a provision for its ratification. This is contrary to the Articles of Confederation, which would require the assent of every state.
James Madison justified the requirement of the ratifications of the conventions of nine states for the establishment of this constitution because of necessity and the principle of self-preservation of political institutions. Madison noted that to require the unanimous ratification of the thirteen states would have subjected the essential interests of the whole to the caprice or corruption of a single member. Federalist, No. 43, by Madison.
Only eleven states initially ratified the new constitution. For a time North Carolina and Rhode Island were excluded from the union, but both states eventually decided to join. Cooley on Constitutional Law (Fourth Ed. 1931), 13, 14.